J-A24025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF LUCY J. SERIN, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: LOUIS M. DEVECCHIS, III | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2575 EDA 2021 |

Appeal from the Order Entered November 9, 2021
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2018-X4599

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED FEBRUARY 7, 2023**

Louis M. DeVecchis, III, appeals from the order granting summary judgment in favor of Cheryl M. Salmon, executrix of the estate of Lucy J. Serin, Deceased, and denying Louis's motion for declaratory judgment. On appeal, Louis challenges the orphans' court's interpretation of certain language contained in the will of Lucy J. Serin ("Decedent"), arguing he had been effectively disinherited. We conclude that the relevant portion of the will was ambiguous, and the orphans' court improperly granted summary judgment in favor of Salmon without a hearing, and without permitting Louis to introduce extrinsic evidence concerning Decedent's intent. We reverse and remand.

Decedent died on December 5, 2018, survived only by her two nephews, Samuel L. DeVecchis and Louis. Samuel and his wife, Cheryl M. Salmon, as co-executors of the estate (sometimes hereinafter referred to as "the co-

executors"), petitioned for letters testamentary and offered for probate a writing created by Decedent. **_See_** Orphans' Court Opinion, 12/21/21, at 1.[1] The register of wills issued letters testamentary to Samuel and Cheryl and admitted the writing to probate. **_See id._** At issue in this appeal is the second item in the writing:

> SECOND: Tangible Personal Property: I give my automobile, clothing, jewelry, household furniture and furnishings, and other tangible personal property together with the insurance policies on said property, to my nephew, SAMUEL L. DeVECCHIS, if he shall be living at my death. + _to his wife Cheryl M. Salmon-DeVecchis_
>
> I give my real estate at … Barrie Road, … and … Patton Drive, … to my nephew, SAMUEL L. DeVECCHIS. _and his wife, Cheryl Salmon-DeVecchis_.
>
> As to my nephew, LOUIS MICHAEL DeVECCHIS, I request that his brother, SAMUEL L. DeVECCHIS, take care of his brother's needs and provide LOUIS MICHAEL with the finances to make his life reasonably comfortable, since LOUIS MICHAEL DeVECCHIS has difficulty responsibly managing money. In this way, I can be assured that his brother, SAMUEL (and his wife, Cheryl _M._ Salmon-DeVecchis), will take good care of his brother, LOUIS MICHAEL'S well-being and needs.

Emergency Petition, 10/2/19, Exhibit A (Will). The writing bears a printed date of August 18, 2016. Some portions of the writing were later crossed out or underlined, and there are two handwritten additions (which are signified in the above-quoted portion in italics). The printed date was also crossed out and the year 2017 was written in place of 2016. The writing is signed by Decedent, but not by any additional witnesses, and it is not notarized.

---

[1] The original probate documents are not included in the certified record.

On October 2, 2019, Louis filed an emergency petition for a hearing and additional relief. Therein, Louis argued that the co-executors failed to provide for his financial needs as required under the 2017 writing. Louis stated he is physically disabled and has a diagnosis of renal cancer. Louis also claimed he faced "immediate and irreparable harm with the imminent loss of his residence and impending homelessness" due to the co-executor's failures. Louis sought a hearing and an emergency plan of action to prevent his pending homelessness. The orphans' court dismissed Louis's emergency petition without prejudice to his ability to file an amended petition to compel accounting.

Louis later filed a claim against the estate in the amount of $101,000.00. In part, Louis sought $24,000 for "Maintenance and support (rent & utilities) per Last Will & Testament: 12 months (January – December 2019), $2[,]000 per month." Claim, 1/16/20.[2] The co-executors filed a petition for citation to dismiss the claim, asserting that Decedent's writing does not require payments to Louis. The orphans' court dismissed the co-executors' petition and directed them to file an account.

---

[2] Louis's claim also identified costs relating to labor exerted in 2003 for reconstruction of the house at Patton Drive, room and board for Decedent's mother during two periods of time, and "claimant's share of his late father's share of his late grandmother's estate in … Patton Drive (25% share of $220,000 fair market value)." These claims are not at issue in this appeal.

The co-executors filed a petition for adjudication of the final account. Louis filed a response and attached an amended claim in the amount of $397,000.00. Louis requested that a trust be established for his benefit under the second and fourth items[3] in the writing, including the transfer of the property at Barrie Road and funds to provide for his financial maintenance, needs and well-being. In response, the co-executors argued Louis is not a beneficiary and, due to the use of the word "request," the writing does not create a trust for his benefit.

On October 22, 2020, Louis filed an omnibus motion, which included a motion in *limine* to allow for admission of documentary evidence; a motion for partial summary judgment in his favor for his claims relating to labor during reconstruction of the Patton Drive house and room and board for Decedent's mother; a motion for declaratory judgment, requesting a finding that the writing created a beneficial interest; a motion to compel production of certain documents; and a motion for expedited and emergency relief. The orphans' court granted, in part, Louis's motion to compel production of documents and denied the omnibus motion in all other respects. The court also directed the parties to submit memoranda of law to address 1) the proper interpretation of Decedent's intent as stated in the second item; 2) whether the second item

---

[3] The fourth item governs incapacity of any beneficiaries.

reflects an intent to create a trust for Louis's benefit; and 3) whether the court may grant summary judgment on the interpretation of Decedent's intent.

The orphans' court granted the parties several extensions of time to file their memoranda of law. During that time, the parties executed a limited general release, in which Louis agreed to "release, remise and forever discharge" any and all claims or demands against the estate. **See** Memorandum of Law (Salmon), 10/14/21, Exhibit A (Limited General Release).[4] However, the limited general release provided an exception for Louis's claim that he has a beneficial interest against the estate. **See id.**

In March 2021, Samuel died, leaving Salmon as the sole executor of the estate.

The parties filed memoranda of law in October 2021. On November 9, 2021, without first holding a hearing on the matter, the orphans' court entered an order granting summary judgment in favor of Salmon as the executrix of the estate and denying Louis's motion for declaratory judgment.

Louis filed a timely notice of appeal. The orphans' court did not order Louis to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Nevertheless, the court filed a Rule 1925(a) opinion.

---

[4] We observe that the limited general release is not entered on the docket. Rather, the document is attached as an exhibit to Salmon's memorandum of law.

Our review of an order granting summary judgment entails reviewing the record to determine whether there is a triable issue of fact:

> We apply the same standard as the [orphans'] court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

*In re Estate of Moskowitz*, 115 A.3d 372, 385 (Pa. Super. 2015) (citation and brackets omitted).

Louis argues that he was named as a beneficiary in the writing drafted by Decedent, and the orphans' court effectively disinherited him by entering summary judgment in favor of Salmon. Louis also claims the orphans' court erred by failing to hold an evidentiary hearing or accept documentary evidence to determine Decedent's intent, where the text of the writing was ambiguous. Additionally, Louis contends he is entitled to an equitable constructive trust as a result of the orphans' court's errors.

An analysis of Louis's claims first requires us to determine whether the document written by Decedent was, in fact, a will under Pennsylvania law. By statute, a "will" is "a written will, codicil or other testamentary writing." 20 Pa.C.S.A. § 102. A will must be in writing, and the decedent's signature must appear at the end of the writing. *See* 20 Pa.C.S.A. § 2502.

"[I]n order to determine whether a particular writing constitutes a will, no formal words are necessary, the form of the instrument is immaterial if its substance is testamentary." ***In re Estate of Shelly***, 950 A.2d 1021, 1024-25 (Pa. Super. 2008) (citation omitted); ***In re Moore's Estate***, 277 A.2d 825, 826 (Pa. 1971) ("[A]n informal document or writing can be a will or codicil if the language suffices to show a testamentary intent."). The key inquiry, therefore, is whether the proffered document is testamentary.

A testamentary document is one that disposes of property. ***See Estate of Shelly***, 950 A.2d at 1025; ***see also In re Estate of Fleigle***, 664 A.2d 612, 615 (Pa. Super. 1995) (explaining that a will must dispose of property, and that "disposition must be intended to take effect after the testator's death."); ***In re Estate of Hopkins***, 570 A.2d 1058, 1059 (Pa. Super. 1990) ("[T]here is one essential element, which is that the document dispose of property."). "[I]f a testator intends to make a testamentary gift, it can be done in many ways and in many forms, and the intent, as we have often said, is the pole-star." ***In re Estate of Tyler***, 80 A.3d 797, 803 (Pa. Super. 2013) (citation and quotation marks omitted).

Here, the orphans' court made no finding regarding whether Decedent's written document, as a whole, was testamentary in nature. However, by accepting the writing for probate, the court inherently determined that Decedent's writing evidenced a testamentary intent. And Louis does not explicitly challenge the admission of the writing as a will. Because the writing

generally provides for disposition of Decedent's tangible personal property upon her death, and Decedent's signature appears at the end of the document, it was properly considered a will and admitted to probate.

Next, we consider the court's interpretation of the challenged portion of the will. The heart of the parties' disagreement lies in how to interpret the portion of the second item concerning Louis: "I request that his brother, SAMUEL L. DEVECCHIS, take care of his brother's needs and provide LOUIS MICHAEL with the finances to make his life reasonably comfortable…."

Louis contends that he is an intended beneficiary of the will, and the orphans' court improperly made a determination as to Decedent's intent based primarily on the use of the word "request." **See generally** Appellant's Brief at 16-29. In contrast, Salmon argues the will encourages her, but does not require her, to provide financial assistance for Louis. **See** Appellee's Brief at 5-11.

"The testator's intent is the polestar in the construction of every will and that intent, if it is not unlawful, must prevail." **In re Estate of Schultheis**, 747 A.2d 918, 922 (Pa. Super. 2000) (citation omitted). A court must ascertain the testator's intent from the language and scheme of the will, along with the relevant surrounding facts and circumstances. **See id.**; **see also In re Estate of Tscherneff**, 203 A.3d 1020, 1024 (Pa. Super. 2019). "Technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason

uncertain. An ambiguity in a will must be found without reliance on extrinsic evidence before extrinsic evidence is admissible." ***Estate of Tscherneff***, 203 A.3d at 1024 (emphasis in original; citations omitted).

Here, the orphans' court first concluded that the language of Decedent's will is unambiguous, and therefore, it could not consider extrinsic evidence. ***See*** Orphans' Court Opinion, 12/21/21, at 3. The court then interpreted the text of the second item in the writing and concluded that the writing failed to establish a trust for Louis's benefit. ***See id.*** In particular, the orphans' court held that "request" constituted precatory language, which is insufficient to create a specific devise. ***See id.*** at 3-4.

We do not agree that the language of the will is unambiguous under these circumstances. Despite its conclusion that the will's terms are unambiguous, the orphans' court also noted that "Decedent's intent is not abundantly clear" regarding the administration of any benefit for Louis. ***Id.*** at 6. While we acknowledge that terms such as "request" are traditionally viewed as precatory, this Court has also held that the use of precatory words does not, alone, defeat the associated terms if the precatory language is used to express a manifest intention. ***See In re Estate of Mumma***, 125 A.3d 1205, 1213 (Pa. Super. 2015). "The test is, whether the precatory expression was used in a mandatory sense, though couched in a mild, polite, courteous command, or only as a suggestion or wish, falling short of binding and compulsory direction." ***In re: Estate of Pearson***, 275 A.2d 336, 339 (Pa.

- 9 -

1971) (citation omitted). In **Mumma**, the phrase at issue began with "if expedient and possible, …" **Id.** at 1212. The **Mumma** panel held that this conditional language clearly indicated a mere wish, and not a binding direction. **See id.** at 1213.

Here, in contrast, Decedent did not use conditional language. Moreover, she indicated that through this request, she could "be assured that … SAMUEL (and his wife, Cheryl *M.* Salmon-DeVecchis), will take good care of his brother, LOUIS MICHAEL'S well-being and needs." We conclude that under these circumstances, Decedent's intent is ambiguous on the face of the document. On the one hand, she did not "direct" Samuel and Salmon to provide for Louis. On the other, she evinced an intent to be "assured" that Samuel and Salmon would provide for Louis. This contradiction cannot be resolved solely through reference to the language of the document; Decedent's intent can only be ascertained through an examination of all the attendant circumstances. Because the language is ambiguous, Louis should have been permitted to introduce extrinsic evidence. There exists a genuine issue of material fact regarding the proper interpretation of the will, and the orphans' court erred by entering summary judgment in this matter.

Based upon the foregoing, we reverse the order of the orphans' court granting summary judgment in favor of Salmon and denying Louis's motion for declaratory judgment, and we remand the case for further proceedings consistent with this Memorandum.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2023