2023 PA Super 79

| BENJAMIN HANBICKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CYNTHIA LEADER | : | No. 835 EDA 2022 |

Appeal from the Order Entered February 28, 2022
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2021-05272

BEFORE:  LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

OPINION BY NICHOLS, J.:                    **FILED MAY 9, 2023**

Appellant Benjamin Hanbicki appeals from the order entering judgment in favor of Appellee Cynthia Leader in a landlord-tenant dispute and ordering Appellant to pay Appellee's attorneys' fees.  Appellant argues that the trial court abused its discretion by imposing sanctions on Appellant after finding him in civil contempt.  After careful review, we affirm in part, vacate in part, and remand for further proceedings.

The trial court summarized the factual and procedural history underlying this case as follows:

> This is a landlord tenant case involving the landlord's wrongful removal of and continued control of the tenants' personal property.  Initially, Landlord, [Appellant,] brought suit against Tenant, [Appellee,] for eviction for non-payment of rent.
>
> On January 11, 2021, [Appellant] initiated the eviction proceeding at the Warrington Magisterial District Court.  On January 20, 2021, [following] a hearing held on January 19, 2021 by the Magisterial District Judge, Mark D. Douple, a judgment was entered in favor

of [Appellant] for non-payment of rent. At this time, however, the [Center for Disease Control (CDC)] eviction moratorium was in effect. Therefore, Judge Douple did not issue an order for possession. It must be noted that the CDC eviction moratorium did not actually end until August 26, 2021, for areas experiencing substantial and high transmission of COVID-19. Additionally, on August 2, 2021, the Honorable [Wallace] H. Bateman, Jr.,[1] entered an order, staying residential evictions for non-payment of rent through October 31, 2021.

[Appellee] resided in the subject leased property with her adult children Jay Leader and Alicyn Leader (hereinafter, collectively with [Appellee], "Tenants"). On August 1, 2021, Jay Leader submitted an application on behalf of the household for rental assistance from Bucks County Rental Assistance Program ("BERA"). On September 14, 2021, [Appellee] was served with an order for possession. Subsequently, on September 24, 2021, [Appellee] submitted a request for continuance to the Magisterial District Court along with an email from BERA confirming Tenants' application for rental assistance. Notwithstanding Tenants' request for a continuance, a writ of eviction was executed on September 27, 2021.

On October 5, 2021, Tenants filed an emergency petition to stay eviction and leave to file appeal *nunc pro tunc*. Tenants vacated the subject property on September 27, 2021, upon the execution of the writ of eviction. Since Tenants were not in possession of the subject property it would be difficult to enforce return of possession to Tenants. [The trial court] could not feasibly stay the eviction even if it did violate the CDC and Bucks County moratoriums.

On October 12, 2021, a hearing was held in consideration of Tenants' emergency petition to stay eviction and leave to file appeal *nunc pro tunc*. Prior to the October 12, 2021 hearing the parties conferenced and it appeared that the parties came to a partial agreement. The partial agreement was that [Appellant] would return Tenants' property. Details of said agreement, such as payment of storage facilities, were not discussed or agreed to. Therefore, [the trial court] proceeded with the hearing. Before completion of the hearing, however, the parties conferred. Upon

---

[1] Judge Bateman is the President Judge of the Court of Common Pleas of Bucks County.

returning from their conference, the parties entered a settlement on the record.

In order to [ensure] the parties complied with their agreement, [the trial court] directed that on October 14, 2021, the following occur: Tenants shall appear at the location, to be disclosed by [Appellant], to retrieve their property at 9 am; Tenants shall have from 9 am until approximately 4 pm with no obstruction from [Appellant]; if a dispute arises as to owner[ship] of belongings, Tenants will make a list of property that they believe is theirs but [Appellant] refused to allow them to take; if there is missing property, Tenants will make a list and exchange at the end of the day; if additional time is needed, the attorneys will be notified by 2 pm and they can negotiate a longer period of time to stay or an additional day; there are no costs associated with the case that will be responsibility to either party. [The trial court] entered an order reducing its directives given during the October 12, 2021 hearing to a writing.

On October 18, 202[1], [Appellee] filed a petition for contempt. The petition for contempt avers that [Appellant] denied Tenants access to their belongings and violated [the trial court's] October 12, 202[1] order by not allowing Tenants additional time to collect their personal property. On October 25, 2021, in response, [Appellant] filed an answer to [Appellee's] petition for contempt with [a] counter-petition for contempt, requesting legal fees for responding to "[Appellee's] frivolous petition for contempt."

\* \* \*

On February 4, 2022, a hearing was held in consideration of [Appellee's] petition for contempt and [Appellant's] counter petition for contempt. On February 25, 2022, [the trial court] entered an order entering a judgment in favor of [Appellee] and against [Appellant] in the amount of $98,000 and ordered [Appellant] to pay attorney's fees in the amount of one thousand dollars $1,000.

Trial Ct. Op., 7/5/22, at 1-5 (footnotes omitted, some formatting altered).

On February 14, 2022, Appellant filed a motion seeking reconsideration and clarification of the trial court's verbal order. Therein, Appellant alleged that Appellee had either retrieved the personal property at issue or had the

ability to do so. Specifically, Appellant stated that Appellee placed a lock on the storage unit containing her personal property. However, the trial court did not rule on Appellant's motion, and as noted, the trial court entered judgment in favor of Appellee on February 28, 2022.

Appellant timely filed a notice of appeal from the trial court's order entering judgment. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

On May 6, 2022, this Court issued a rule directing Appellant to show cause as to the appealability of the trial court's February 28, 2022 order, which did not include a present finding of contempt. Appellant timely filed a response. This Court entered a *per curiam* order on May 31, 2022 discharging the rule to show cause, and deferring the issue of appealability to the merits panel.

On appeal, Appellant raises the following issues for our review, which we reorder as follows:

1. Whether the trial court abused its discretion by sanctioning Appellant for civil contempt for violating its order where: (a) the alleged wrongful conduct was not prohibited by definite, clear, and specific language in the order and (b) the evidence shows that Appellant did not willfully engage in wrongdoing but rather was uncertain about what the order mandated and/or prohibited[?]

2. Whether the trial court abused its discretion by abruptly conducting the contempt hearing, proceeding in haste without permitting the parties' attorneys time to meet and confer with each other, after meeting with their clients, about a potential settlement after a brief conference with the trial court's staff, which gave the parties a sense of where the court was leaning[?]

- 4 -

3. Whether the trial court abused its discretion and erred as a matter of law by imposing a punitive sanction authorized by the Landlord and Tenant Act as punishment for Appellant's alleged contempt, rather than awarding Appellee compensatory actual damages, which is what a court is authorized to impose as part of its civil contempt determination[?]

4. Whether the trial court erred by finding that Appellee incurred actual damages in the amount of $98,000, when the evidence is insufficient to support it[?]

Appellant's Brief at 5-6 (formatting altered).[2]

**Appealability of Order**

Before addressing Appellants' claims, we must determine whether the trial court's order is appealable. It is well settled that questions concerning the appealability of an order implicate our jurisdiction, and we may address that question *sua sponte*. **See Jacksonian v. Temple Univ. Health Sys. Found.**, 862 A.2d 1275, 1279 (Pa. Super. 2004); **see also Stivers Temp. Pers., Inc. v. Brown**, 789 A.2d 292, 294 (Pa. Super. 2001). Generally, an appeal to our Court lies only from a final order. **See Barak v. Karolizki**, 196 A.3d 208, 215 (Pa. Super. 2018); **see also** 42 Pa.C.S. § 742. A final order is any order that "disposes of all claims and of all parties[.]" Pa.R.A.P. 341(b)(1).

This Court has held that a contempt order is final and appealable if the order contains (1) a present finding of contempt and (2) an imposition of sanctions. **See Genovese v. Genovese**, 550 A.2d 1021, 1023 (Pa. Super.

_____

[2] Appellee did not file an appellate brief in this matter.

- 5 -

1988).   This Court has determined that an award of attorney's fees is a sufficient sanction to render the order appealable.  **_See Rhoades v. Pryce_**, 874 A.2d 148, 152-53 (Pa. Super. 2005) (_en banc_).

Here, Appellant has appealed from the trial court's order directing him to pay attorneys' fees as a sanction for contempt.  As noted previously, the order does not contain an explicit present finding of contempt.  However, in addition to attorneys' fees, the order also entered judgment in the amount of $98,000 in favor of Appellee and against Appellant.  At the contempt hearing, the trial court explained:

> Now the question is:  Who is responsible for the $98,000 missing property?   [Appellant] was told not to touch anything or he'd become responsible.   He decided to become very aggressive, move stuff out of the storage units, put them in the driveway, took them out of the basement, et cetera, et cetera.  He is responsible; therefore, the [trial court] enters a judgment in the amount of $98,000 in favor of [Appellee] and attorney's fees in the amount of . . . $1,000.

N.T. Contempt Hr'g, 2/4/22, at 82.

In its Rule 1925(a) opinion, the trial court further explained:

It was ordered by [the trial court] that Tenants receive additional time if requested by 2:00 pm on October 12, 2021 to collect all of their personal property.  Tenants did make a timely request and [Appellant] allowed only a few additional hours on October 12, 2021.   [Appellant] refused any additional day for Tenants to collect all of their property.   Additionally, [Appellant] refused Tenants access to the leased premises, which Tenants believed still housed some of their belongings.   [The trial court] directed [Appellant] not to touch any of the personal property during the October 12, 2021 hearing.

Even after [the trial court] ordered [Appellant] to allow reasonable access to Tenants to retrieve all of their personal property,

- 6 -

[Appellant] failed to do so. At some point, [Appellant] allowed another day of access to Tenants, however, it was after [Appellant] refused and cancelled many arranged days, about fifteen times. Due to [Appellant's] unreasonable refusal for access, Tenants had lost their moving help and money to rent a truck. Tenants lived in the leased premises since 2019, during which time, being a family of three, had amassed so much property that [Appellant] had to move and store it in three different locations. One storage unit was a twenty-by-twenty [foot] unit, and it was filled with Tenants' belongings. Further, it was made clear to [the trial court] by [Appellant's] admission that he was willingly holding onto Tenants' personal belongings, and therefore, willfully violating Section 50[5.1] of the [Landlord Tenant Act], in order to gain leverage over Tenants because he "would like to get paid the money owed to him."

* * *

[The trial court] did find [Appellant] in contempt. [The trial court's] February 25, 2022 order states "in consideration of [Appellee's] motion for contempt . . . Judgment is entered in favor of [Appellee]. . . .["] When ruling on a motion, judgment in favor of the petitioner, and therefore, against the respondent, makes it clear that the motion was granted. In this case, [Appellee] had filed the motion for contempt of [Appellant. The trial court] ruled in favor of [Appellee] and thereby granted the motion for contempt of [Appellant.]

Trial Ct. Op. at 13-15 (footnotes omitted, ellipses in original, and some formatting altered).

Based on the record before us, it is clear that the order from which Appellant appeals constitutes both a present finding of contempt and imposes sanctions, despite the lack of an explicit written present finding of contempt. *See Genovese*, 550 A.2d at 1023. Indeed, both the trial court's order and the relevant notes of testimony reflect that the trial court found Appellant responsible for moving and/or withholding Appellee's personal property in violation of a prior order, and the court imposed sanctions. Moreover, in its

- 7 -

Rule 1925(a) opinion, the trial court specifically stated that it "did find [Appellant] in contempt." Trial Ct. Op. at 15. Accordingly, we conclude that this appeal is properly before this Court, and we have jurisdiction to consider it on its merits.

### Finding of Contempt

We address Appellant's first two issues together. First, Appellant argues that the trial court abused its discretion when it held the contempt hearing without providing the parties with an opportunity to confer to discuss a potential settlement. Appellant's Brief at 49. Second, Appellant contends that the trial court abused its discretion by finding Appellant in contempt because Appellant "did not willfully violate definite, clear, or specific terms [of] the October 12, 2021 order." *Id.* at 34. Specifically, Appellant argues that the trial court held him in contempt due to his noncompliance with what "[Appellee] and the trial court expected him to do," without express language indicating the same found in either the trial court's October 12, 2021 order or in the October 12, 2021 hearing transcript. *Id.* at 37-38. Additionally, Appellant alleges that the October 12, 2021 order does not require Appellant to grant unlimited access in order for Appellee to retrieve her personal property and that "the fact that [Appellant] also wished to return to the trial court to discuss [outstanding judgments in favor of him and against Appellee] does not prove that he violated any of the specific terms of the October 12[, 2021] order." *Id.* at 38.

In reviewing Appellant's claims, we are guided by the following principles:

> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

***Thompson v. Thompson***, 187 A.3d 259, 263 (Pa. Super. 2018) (citation omitted, some formatting altered).

We first address Appellant's argument that the trial court abused its discretion when it held a hearing without providing the parties with an opportunity to confer and reach a potential settlement. Specifically, Appellant contends that the custom of the Bucks County Court of Common Pleas and other jurisdictions require "attorneys conference the case with the judge or his staff and they typically glean a sense of where the court is leaning. Armed with this crucial knowledge after having staked out their respective positions in their pleadings, the attorneys speak with their clients to resolve the dispute if possible." Appellant's Brief at 50-51.

Importantly, we note that this Court is not bound by the "unwritten rules" of Bucks County or any other jurisdiction. Indeed, Appellant has not directed this Court to any case law, statute, Pennsylvania rule of court, or local Bucks County rule of court that requires providing parties the opportunity to negotiate a settlement prior to a hearing. Moreover, Appellant's claim that

the trial court "had a different agenda from fostering a resolution by allowing counsel sufficient time to confer" is conclusory and belied by the record. *Id.* at 50. As noted by the trial court, roughly four months had elapsed from the time the instant contempt petition was filed until the trial court convened the hearing on February 4, 2022. *See* Trial Ct. Op. at 10. Based on our review of the record, we discern no abuse of discretion on the part of the trial court in holding a hearing after four months without providing an additional opportunity for the parties to confer.

We next address whether the trial court erred when it found Appellant to be in civil contempt. "In civil contempt proceedings[,] the burden is on the complaining party to prove noncompliance by a preponderance of the evidence." *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 765 (Pa. Super. 2022) (citation omitted and formatting altered), *appeal denied*, --- A.3d ---, 410 MAL 2022, 2023 WL 3069525 (Pa. filed Apr. 25, 2023).

This Court has explained:

> To be punished for contempt, a party must not only have violated a clear order, but that order must have been definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held

in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

In other words, the alleged contemnor must know of the prohibited conduct, with any ambiguities, omissions, or uncertainties in the order construed in favor of the alleged contemnor, the act constituting the violation must be deliberate, and the act of the alleged contemnor must have been done with improper intent.

\* \* \*

[A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt. Unless the evidence establishes an intentional disobedience or an intentional disregard of the lawful process of the court, no contempt has been proven.

***Sutch v. Roxborough Mem'l Hosp.***, 142 A.3d 38, 67-68 (Pa. Super. 2016)

(citations omitted and formatting altered).

Here, as noted previously, both parties attended the initial hearing on October 12, 2021. At that time, the parties entered a settlement agreement concerning Appellee's personal property, which the trial court explained as follows:

There's been further [off the record] discussion with regard to this case, and the [trial court] is indicating that [October 14, 2021] at 9:00 [a.m. Appellee] will be appear at the residence to reclaim all of [her] property. There's to be no obstructions or other things by [Appellant].

If a dispute arises as to the property as to whether it's your property or not, [Appellee] will make a list of property they believe is theirs that they're not being allowed to take and the attorneys will negotiate it or come back again.

If there is missing property, [Appellee] will make a list of what [she] believes is the missing property, and they will exchange their lists at the end of the day.

[Appellee] should have from 9 a.m. until approximately 4 p.m. to remove [her] items from the storage bins. If additional time is needed, the attorneys will be notified by 2 p.m. so they can negotiate a longer period of time to stay or an additional day.

N.T. Hr'g, 10/12/21, at 53.

Following the hearing, the trial court issued an order stating:

(1)   [Appellant] shall allow [Appellee] to collect all personal property on October 14, 2021, from 9:00 AM until 4:00 PM;

(2)   If additional time is necessary, [Appellee] shall notify [Appellant] by 2:00 PM on October 14, 2021;

(3)   If a dispute arises, [Appellee] shall make a list of any missing property. Likewise, [Appellant] shall make a list of any property believed to be his; and

(4)   No costs are associated with this case.

Trial Ct. Order, 10/12/21.

On October 18, 2021, Appellee filed a petition for contempt in which she alleged that Appellant violated the terms of the trial court's October 12, 2021 order. On February 4, 2022, the trial court conducted a contempt hearing. Ultimately, the trial court found Appellant in civil contempt, finding that Appellant improperly moved and/or withheld Appellee's personal property. As a result, the trial court entered a $98,000 judgment against Appellant and sanctioned him with an additional $1,000 in counsel fees.

In its Rule 1925(a) opinion, the trial court explained:

[Appellant] acted with volition, he did not make a good faith effort to allow [Appellee] to retrieve all of [her] property, he made it very difficult, continued refusal and wrongly withheld [Appellee's] property, admitting he did so in order to gain leverage over [Appellee. Appellant] admitted to wrongful intent, in his

- 12 -

admission to wrongfully withholding [Appellee's] property in an attempt to recover monies [Appellee] owed to him.

Trial Ct. Op. at 17.

Based on our review of the record, we discern no abuse of discretion by the trial court in finding Appellant in civil contempt. First, there is no dispute that Appellant had notice of the trial court's October 12, 2021 order. Indeed, Appellant was not only present at the October 12, 2021 hearing, but also affirmatively expressed understanding of the trial court's order. *See* N.T. Hr'g, 10/12/21, at 53-57. Further, the record reflects that Appellee timely requested additional time to move her personal property in accordance with the trial court's October 12, 2021 order. *See* N.T. Contempt Hr'g, 2/4/22, at 30. In response, Appellant, by his own admission, granted an additional "few" hours for Appellee to recover her property. *See id.* at 65. During the contempt hearing, Appellant further noted the existence of several outstanding judgments against Appellee and in favor of Appellant, and he admitted that he intended to withhold Appellee's property as a means of leverage against Appellee. *See id.* at 72-73. For these reasons, we find that the trial court did not abuse its discretion when it found Appellant in civil contempt of court. *See Sutch*, 142 A.3d at 67-68. Accordingly, no relief is due.

**Damages**

In his next issue, Appellant alleges that the trial court imposed a punitive sanction rather than a sanction based on actual damages. Appellant's Brief at

39. Specifically, Appellant contends that the trial court exceeded its contempt authority when it imposed a $98,000 judgment[3] against Appellant for violating provisions of the Landlord-Tenant Act[4] (LTA). Appellant's Brief at 42. Appellant argues that the trial court's judgment was akin to "a penalty imposed on [Appellant] that had nothing to do with his alleged violation of the October 12[, 2021] order." *Id.* Further, Appellant alleges that the trial court improperly raised and considered whether Appellant violated provisions of the LTA. *Id.* at 43.

This Court has explained a trial court's authority to exercise civil contempt powers as follows:

The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. The court may order civil or criminal contempt.

The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive. If he is given an opportunity

---

[3] The record reflects that the trial court entered a judgment of $98,000 based on Jay Leader's testimony and accompanying documenting evidence that included items such as diamond earrings valued at $22,000, a refrigerator valued at $5,000, three televisions valued at a total of $4,900, and $10,000 in cash. *See* Reproduced Record at 207a. When he testified during the contempt hearing, Mr. Leader initially stated that the value of the missing property was "roughly $100,000." N.T. Contempt Hr'g, 2/4/22, at 13. After further questions from the trial court, Mr. Leader again testified that the value of the missing property was $100,000. *Id.* at 14. The trial court asked Mr. Leader if he was sure of the value, at which point Mr. Leader indicated that he was "not one hundred percent positive sure" of the value, and he then stated that he added the value of the missing property the night prior to the contempt hearing to arrive at a total value of $98,000. *Id.*

[4] 68 P.S. § 250.101-250.602.

to purge himself before imposition of punishment, the contempt Order is civil in nature. If the purpose of the Order is to punish despite an opportunity to purge, the Order is criminal in nature.

A court may exercise its civil contempt power to enforce compliance with its Orders for the benefit of the party in whose favor the Order runs but not to inflict punishment.

*In re Estate of DiSabato*, 165 A.3d 987, 992 (Pa. Super. 2017) (citations omitted). Indeed, this Court has held that in civil contempt, the contemnor must be provided with an avenue to "relieve himself of the sanction by complying with the court order." *Gleit v. Nguyen*, 199 A.3d 1240, 1248 (Pa. Super. 2018) (citations omitted).

Additionally, this Court has further explained:

It is clear that a court can for present or past acts of misbehavior amounting to civil contempt impose an unconditional compensatory fine and/or a conditional fine and imprisonment, and such fine may be payable to the United States or to the Commonwealth or to the county or to the individual who was injured.

In *Parker v. United States*, [126 F.2d 370, 380 (1st Cir. 1942), the United States Court of Appeals for the First Circuit stated:] "It is well settled, however, that the court may, in a proceeding for civil contempt, impose the remedial punishment of a fine payable to an aggrieved litigant as compensation for the special damages he may have sustained by reason of the contumacious conduct of the offender." Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained. Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy.

***Jack Rees Nursing & Rehab. Servs. v. Hersperger***, 600 A.2d 207, 209 (Pa. Super. 1991) (citations omitted and some formatting altered); ***see also Sutch***, 142 A.3d at 68 (same).

Finally, this Court has held that a trial court should not act as an advocate for either party. ***See In re Estate of Tscherneff***, 203 A.3d 1020, 1027 (Pa. Super. 2019). In ***Tscherneff***, the orphans' court was reviewing an executor's first and final account and petition for adjudication of a will. ***Id.*** at 1022. The trial court denied the petition, and further directed the filing of an amended account to include a bank account. ***Id.*** On appeal, this Court determined that the inclusion of the bank account in an amended account for the estate was an issue that had not been raised by any party. ***Id.*** at 1026. By raising that issue *sua sponte*, the trial court deprived one of the parties of an opportunity to be heard and "inappropriately acted as an advocate" for one of the heirs. ***Id.*** at 1027; ***see also Commonwealth v. Morales***, 80 A.3d 1177, 1179 (Pa. 2013) (*per curiam*) (stating that it is "improper for trial court to act as advocate and *sua sponte* raise defenses on behalf of a party" (citing ***MacGregor v. Mediq Inc.***, 576 A.2d 1123, 1128 (Pa. Super. 1990))).

In the instant case, the trial court classifies this case as one of civil contempt. ***See*** Trial Ct. Op. at 17. In its Rule 1925(a) opinion, the trial court indicates that it entered a $98,000 judgment against Appellant, not only because he was in contempt of the trial court's October 12, 2021 order, but because he was also in "willful violation of the LTA [which] occurred prior to [the trial court's] October 12, 2021 order and continued to occur after [the

trial court] ordered compliance." *Id.* at 16. Indeed, the trial court noted as follows:

> The LTA provides for recovery of damages arising out of a landlord's violation of the statute. Any damages awarded in violation of section 50[5].1[5] are awarded based on the violating conduct and not based on whether a landlord rights his wrongs. Further, the LTA allows for treble damages, or three times the value of the wrongfully controlled personal property, in such cases. Section 505.1 of the LTA was amended in 2014 adding the treble damages provision. While treble damages remain discretionary, treble damages are meant for remedial purposes but do contain a deterrent, punitive element. Punitive damages are never considered unjust enrichment and therefore, [the trial court's] judgment in the amount equal to the value of personal property under the continued, willful, and in bad faith control cannot be seen as such.
>
> *        *        *
>
> In this case, [Appellant] was adjudged to be in civil contempt with [the trial court's] October 12, 2021 order enforcing [Appellant's] compliance with Section 50[5].1 of the LTA by continuing to refuse [Appellee] access to retrieve all personal property. [The trial court], therefore, had the power to impose sanctions in an amount which would afford Appellee complete remedial relief.

*Id.* at 16, 18 (citations and footnotes omitted and formatting altered). Specifically, the trial court stated that it calculated the $98,000 judgment value based upon Appellee's computation. *Id.* at 14. As noted by the trial court, items for which Appellee was unable to provide a value were not included in the judgment. *Id.* As the trial court further explained:

> [The trial court] based its judgment on the actual value of [Appellee's] property that [Appellant] wrongfully took control of in violation of the section 505.1 of the [LTA]. The value of

---

[5] 68 P.S. § 250.505a.

[Appellee's] property that [Appellant] wrongfully controlled was testified to and entered into evidence. [Appellee's] methodology in calculating value was done by both receipts and by way of research. As noted in [the trial court's] February 4, 2022 order entered at the [contempt] hearing, [the trial court] had no alternative but to accept the value of [Appellee's] property because [Appellant] did not object to value presented or the methodology used by [Appellee] in calculating the value.

*Id.* at 14-15 (footnotes omitted).

The record, however, does not reflect that Appellee filed a complaint pursuant to LTA, nor does Appellee ever plead that Appellant violated the LTA. Rather, the record reflects that the instant case first came before the trial court in the form of an emergency motion to stay eviction and leave to file an appeal *nunc pro tunc*, which Appellee filed on October 5, 2021, stemming from an eviction that was executed on September 27, 2021. On October 8, 2021, Appellee filed a memorandum of law. At no point in Appellee's emergency motion or in the memorandum of law was the LTA referenced, nor did Appellee allege that Appellant had acted in violation of the LTA with regard to the disposition of Appellee's personal property.

The trial court held a hearing on October 12, 2021 to address the emergency motion to stay eviction. At the hearing, during direct examination of Appellee's son, Jay Leader, Mr. Leader began testifying about his unsuccessful attempts to remove personal property from the premises Appellee leased from Appellant. N.T. Hr'g, 10/12/21, at 27-29. At that point, the trial court asked Appellee's counsel about permissible damages and offered to continue the proceedings in order for counsel to obtain evidence of

- 18 -

the value of Appellee's personal property. *Id.* at 29-30. Specifically, the trial court said: "Counsel, I'll continue this so you can get that kind of evidence, if that's what you need. But you need evidence. You need somebody that can estimate the value of the personal property." *Id.* at 30.

During Appellant's counsel's cross-examination of Mr. Leader, the parties reached a settlement agreement. As detailed above, pursuant to the terms of the agreement, Appellee had from 9:00 a.m. until 4:00 p.m. On October 14, 2021 to retrieve her personal property, and that if any additional time was required, Appellee was required to notify Appellant by 2:00 p.m. on October 14, 2021. *See* Trial Ct. Order, 10/12/21.

On October 18, 2021, Appellee filed a petition for contempt and alleged that Appellant violated the terms of the trial court's order entered October 12, 2021. *See generally* Appellee's Pet. for Contempt, 10/18/21. However, Appellee did not allege that Appellant violated provisions of the LTA in that petition. *Id.* During the hearing on Appellee's contempt petition, while Appellee's counsel indirectly referenced the LTA, telling the trial court that "the statute does allow for treble damages," N.T. Contempt Hr'g, 2/4/22, at 18,[6] neither party addressed it specifically. Additionally, the record reflects that when each party gave closing arguments, neither party even mentioned the LTA nor alleged that Appellant had violated the LTA. *Id.* at 77-80. Moreover, when announcing its decision regarding the petition for contempt,

---

[6] The LTA permits a court to award treble damages when a landlord violates the provisions of 68 P.S. § 250.505a. 68 P.S. § 250.505a(i).

- 19 -

the trial court did not reference the LTA, nor did it find that Appellant had violated the LTA. *Id.* at 80-82.

On this record, we are constrained to conclude that the trial court failed to provide Appellant with the opportunity to purge himself of his contempt, which is a requirement in civil contempt proceedings. *See DiSabato*, 165 A.3d at 992; *see also Gleit*, 199 A.3d at 1248. Moreover, to the extent that the $98,000 judgment represents compensation to Appellee for an actual loss, the evidence of record does not indicate that the $98,000 judgment represents Appellee's actual loss. *See Jack Rees Nursing & Rehab. Servs.*, 600 A.2d at 209; *see also Sutch*, 142 A.3d at 68. By comparison, damages awarded pursuant to a violation of the LTA are not limited to actual loss, as the LTA permits a court to award treble damages. 68 P.S. § 250.505a(i). Indeed, the record indicates that following the February 4, 2022 contempt hearing, the personal property of Appellee that remained in Appellant's possession was held in one fixed-location storage unit, and that Appellee placed her own lock on the storage unit. Appellant's Mot. for Recons. and to Clarify Verbal Order, 2/14/22, at ¶¶ 10-11. The record before us does not contain any evidence as to what Appellee's actual loss was relating to Appellant's contempt. For these reasons, we are constrained to conclude that the trial court abused its discretion when it entered a $98,000 judgment against Appellant. *See Thompson*, 187 A.3d at 263.

Therefore, we affirm the trial court's finding of contempt, and we affirm the trial court's award of $1,000 in counsel fees.[7]  However, we vacate the $98,000 judgment entered against Appellant and remand this case for further proceedings for the trial court to ascertain the amount of actual loss incurred by Appellee relating to Appellant's contempt.

Judgment affirmed in part and vacated in part.  Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2023

---

[7] Appellant does not contest the award of counsel fees.  Appellant's Mot. for Recons. and to Clarify Verbal Order, 2/14/22, at ¶ 25.