J-A23028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KATHERINE HERR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TREVOR GETZ | : | |
| | : | |
| Appellant | : | No. 489 MDA 2024 |

Appeal from the Order Entered March 15, 2024
In the Court of Common Pleas of Berks County
Civil Division at No(s):  21 11394

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.:          **FILED: DECEMBER 23, 2024**

Trevor Getz ("Father") appeals from the order finding him in contempt for violating the legal custody provision of the existing custody order regarding his six-year-old twin sons, A.J.G. and T.T.G. (collectively, "the Children" or "the Minor Children").  After careful review, we affirm.

The certified record reveals that Katherine Herr ("Mother") initiated the underlying child custody action against Father on July 7, 2021, along with a divorce complaint.  Following an evidentiary hearing, by order dated November 14, 2022 ("existing custody order"), the trial court awarded Mother sole legal and primary physical custody of the Children and Father partial physical custody every Sunday from 11:00 a.m. to 6:00 p.m. and every Wednesday from 4:30 p.m. to 7:00 p.m.  ***See*** Existing Custody Order, 11/14/22, at ¶ 1 (Legal Custody), ¶ 2 (Physical Custody).  In addition, the

existing custody order included, *inter alia*, a provision titled "contempt for noncompliance." ***See id.*** at ¶ 17. Also relevant to this appeal are the following four appendices attached to and made part of the existing custody order: Appendix to Custody Order; Appendix B (setting forth 23 Pa.C.S.A. § 5337 (Relocation)); Appendix C (Explanation of Joint/Shared Custody); and Appendix D ("Our Family Wizard"). ***Id.*** at ¶ 19.

With respect to its fashioning of the existing custody order, the trial court found "that the analysis of the evidence weighed very heavily against Father." Trial Court Opinion, 4/15/24, at 10. Specifically, the court concluded that

> Father was exhibiting the early signs of alienating the Minor Children against Mother. The court also found that the level of conflict between Mother and Father is very high being overt at times and at other times being passive-aggressive. The evidence established at the time of the 2022 trial that Father had been dishonest, including being dishonest with mental health professionals.
>
> Father's lack of honesty goes to the heart of Mother's and Father's ability to co-parent. In the decision in 2022, the court noted that Mother does not trust Father and believes he is manipulative and controlling. The court found Mother's opinion to be a reasonable conclusion based upon Father's actions.
>
> In its decision in 2022, the court said,
>
> > Father does not view Mother as a parent, but as the enemy. He chooses to fight first; only after he feels he has beaten his opposition into submission does he assert he was being cooperative all along. Father is intent on manipulating and controlling people, including the professionals engaged to help him by providing them with false information. . . . The court finds it is Father's goal to win, regardless of the consequences that he may be hurting the Children.

Father's actions do not serve the best interests of the Children.

*See* Existing Custody Order, 11/14/22, at 25.

. . .

A thorough review of the evidence in this case demonstrates that there are ample reasons to doubt Father's ability to place the needs of the Children over his own interests or to achieve a minimal degree of cooperation. . . .

*Id.* at 23.

Trial Court Opinion, 4/15/24, at 10-11, 22 (cleaned up).

On January 8, 2024, Mother filed the subject petition for contempt alleging that Father violated the sole legal custody provision in the existing custody order by (1) requesting educational information about the Children from the Goddard School on January 2, 2024; (2) registering as an emergency contact with the Children's pediatrician's office on January 2, 2024; (3) attempting to schedule an appointment with the Children and their pediatrician on March 10, 2023; (4) attending the Children's dental appointment on December 6, 2023; and (5) scheduling a "family observation" for him and the Children on December 29, 2023.[1] *See* Petition for Contempt,

---

[1] As discussed *infra*, the "family observation" involved Father's scheduled mental health evaluation.

1/8/24, at ¶¶ 2-7. Mother requested that Father be found in contempt of court and sanctioned in accordance with 23 Pa.C.S.A. § 5323(g)(1)(i-v).[2]

The court held an evidentiary hearing on March 14, 2024, during which the parties testified. In addition, the court admitted nine exhibits introduced

---

[2] Section 5323(g) of the Custody Act, 23 Pa.C.S.A. § 5323(g), provides:

**§ 5323. Award of Custody.**

. . .

**(g) *Contempt for noncompliance with any custody order.***

**(1)** A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

**(i)** Imprisonment for a period of not more than six months.

**(ii)** A fine of not more than $ 500.

**(iii)** Probation for a period of not more than six months.

**(iv)** An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

**(v)** Counsel fees and costs.

**(2)** An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

. . .

23 Pa.C.S.A. § 5323(g).

by Mother. With respect to all of Mother's averments except her first one about Father contacting the Goddard School requesting educational information about the Children, the trial court found on the record in open court that Father "is in contempt of court" and sanctioned him as follows:

> [Father] shall be immediately committed to the Berks County Jail for a period of 60 days. [Father] may purge himself from contempt by doing the following:
>
>> Paying a fine of $500 to the County of Berks Court of Common Pleas. . . .
>>
>> Payment of attorney's fees and costs in the amount of $2000. . . .
>>
>> And finally, issuing a letter to all educators, healthcare providers, dental providers and psychological providers for the Children stating, "I am writing this letter pursuant to an order of the Court of Common Pleas of Berks County to inform you that I am not permitted to obtain any information about my children directly from you. Please remove my name as a contact for my children. If you have any questions about the content of this letter please call my [a]ttorney. . . ." A copy of these letters shall be provided to [Mother's attorney].
>>
>> Further, [Father] shall direct his [a]ttorney to file a proof of service with the Office of the Prothonotary of Berks County evidencing that the letters have been served upon the respective educators, healthcare providers, dental providers and psychological providers. All letters shall be included with the proof of service.

N.T., 3/14/24, at 58, 60-61 (cleaned up in part). Before adjourning, the court directed the deputy to "take [Father] into custody and take him to the Berks County Jail."[3] *Id.* at 62.

The trial court memorialized its decision by order dated March 14, 2024, and entered on March 15, 2024.[4] Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) on April 2, 2024.[5] The trial court filed its Rule 1925(a) opinion on April 15, 2024.

On appeal, Father raises the following issues for review:

_____

[3] The trial court previously found Father in contempt of court on July 14, 2022, prior to issuing the existing custody order, for violating an order for co-parenting counseling. The court sanctioned Father with fines and counsel fees. *See* Trial Court Opinion, 4/15/24, at 2-3.

[4] On March 15, 2024, pursuant to Father's motion, the court found that Father "has satisfied the purge conditions" and that Father's contempt of court "is purged." Order, 3/15/24. The court further directed the warden of the Berks County Jail to "immediately discharge and release" Father "from confinement without further restrictions." *Id.*

[5] It is well-settled that this Court "will not decide moot or abstract questions, or enter a judgment or decree to which effect cannot be given." *Griffin v. Griffin*, 558 A.2d 86, 89 (Pa. Super. 1989). Instantly, as stated above, Father satisfied the sanctions imposed by the court, and his contempt of court was purged. However, he remains subject to the legal custody provision in the existing custody order. As such, if Father again fails to comply with the provision, he will be subject to contempt proceedings. Therefore, we conclude that Father's appeal is not moot. *See id.* (holding husband's release from prison upon satisfying his support arrearages did not render issue on appeal moot where husband remained subject to continuing support order under which he could again be subject to contempt proceedings giving rise to same issue).

- 6 -

A.      Whether the trial court committed an error of law and/or an abuse of discretion when Father was held in civil contempt of the existing custody order by attempting to contact the Children's pediatrician in March of 2023?

B.      Whether the trial court committed an error of law and/or an abuse of discretion when Father was held in civil contempt of the existing custody order by attending the Children's dental appointment on December 6, 2023?

C.      Whether the trial court committed an error of law and/or an abuse of discretion when Father was held in civil contempt of the existing custody order by asking Mother to permit him to take the Children to the evaluator for family observation?

D.      Whether the trial court committed an error of law and/or an abuse of discretion when Father was held in civil contempt of the existing custody order when Father contacted the Children's pediatrician and requested to be placed as a contact person and inquired about the medical portal?

Father's Brief at 4-5 (cleaned up).

We review the order on appeal for an abuse of discretion. *See Hanbicki v. Leader*, 294 A.3d 1234, 1240 (Pa. Super. 2023). "If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." *Id.* (citation omitted).

This Court has explained that "[i]n civil contempt proceedings, the burden is on the complaining party to prove noncompliance by a preponderance of the evidence." *Id.* at 1241 (citation omitted). Specifically,

To be punished for contempt, a party must not only have violated a clear order, but that order must have been definite, clear, and specific—leaving no doubt or uncertainty in the mind of the

- 7 -

contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

In other words, the alleged contemnor must know of the prohibited conduct, with any ambiguities, omissions, or uncertainties in the order construed in favor of the alleged contemnor, the act constituting the violation must be deliberate, and the act of the alleged contemnor must have been done with improper intent.

. . .

[A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt. Unless the evidence establishes an intentional disobedience or an intentional disregard of the lawful process of the court, no contempt has been proven.

*Id.* (citation omitted and formatting altered).

In this case, the relevant provision in the existing custody order is as follows.

> **1.** **LEGAL CUSTODY** [Mother] shall have sole legal custody of [the Children]. "Legal custody" is [] the legal right to make major decisions effecting [*sic*] the best interests of the Minor Children, including, but not limited to, medical, religious and educational decisions. Mother shall keep [Father] informed of all major events and decisions impacting the lives of the Minor Children. Further, Mother may, in her sole and exclusive judgment, seek and solicit the input of Father, however, she is not required to do so. Regardless of whether Mother seeks and solicits the input of Father, **all matters relating, but not limited to, medical,**

- 8 -

**religious and educational decisions impacting the Minor Children are expressly and exclusively reserved to Mother.**

Existing Custody Order, 11/14/22, at ¶ 1 ("legal custody provision") (emphasis added).[6]

The trial court concluded that the actions described *infra* by Father violated the legal custody provision and "were a willful, intentional and deliberate attempt to assert his control over and circumvent the existing court ordered provisions relating to the legal custody of the Minor Children." Order, 3/15/24, at ¶ 28. Specifically, the court found, in relevant part:

8. On December 6, 2023, Father appeared at a dentist office and attended a dentist appointment, despite Mother repeatedly requesting that he not appear.

9. Pursuant to [the legal custody provision], . . . all matters relating to medical decisions were exclusively reserved to Mother, including approving who may attend medical and/or dental appointments.

10. Pursuant to [the legal custody provision], . . . Father did not have the authority to the attend dental appointments for the Minor Children unless expressly approved by Mother.

11. By his unilateral actions of appearing at the Minor Children's dental appointment, Father intentionally violated and attempted to interfere with and circumvent [the legal custody provision].

12. At some point prior to December 29, 2023, without the approval of Mother or the court, Father scheduled an appointment for a family observation to occur with himself and the Minor

---

[6] The Custody Act defines "sole legal custody" as "[t]he right of one individual to exclusive legal custody of the child." 23 Pa.C.S.A. § 5322. As set forth in the legal custody provision, the Act defines "legal custody" as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and educational decisions." ***Id.***

Children at a time that the Minor Children would be attending school. This resulted in a need to remove the Minor Children from school.

13. On December 29, 2023[,] at 11:08 a.m., Father sent a message to Mother stating, "The evaluator that I am working with has scheduled a family observation for myself and [the Children] on January 12th. This is taking place and I will need to pick up [the Children] at 11:00 a.m. from Goddard School. I am not sure exactly how long the evaluation will be. I am happy to drop them off at your house at the conclusion[.] [P]lease let me know what your schedule is so we can make arrangements. If you could please let the school know as the time gets closer that would be great."

14. On January 2, 2024[,] at 12:52 p.m., Mother sent a message to Father stating, "I did not consent to [the Children] being involved in your evaluation."

15. Pursuant to [the legal custody provision], . . . all matters relating to medical decisions, including the scheduling of family observations, were exclusively reserved to Mother.

16. Pursuant to [the legal custody provision], . . . Father did not have the authority to schedule a family evaluation [with] the Minor Children.

17. By his actions in unilaterally scheduling a family evaluation with the Minor Children, Father intentionally violated and attempted to interfere with and circumvent [the existing custody order].

18. Pursuant to [the legal custody provision], . . . all matters relating to educational decisions, including if and when the Minor Children may be dismissed from school early, were exclusively reserved to Mother.

19. Pursuant to [the legal custody provision], . . . Father did not have the authority to schedule a family evaluation [with] the Minor Children at a time that would require the Minor Children to be excused from school early.

20. By his actions in unilaterally scheduling a family evaluation at a time that would require the Minor Children to be excused from

school early, Father intentionally violated and attempted to interfere with and circumvent [the existing custody order].

21. On or about January 3, 2024, Father contacted the Minor Children's doctor's office directly for the purposes of obtaining information about the Minor Children and causing his name to be added as an emergency contact to the Minor Children's medical records.

22. Pursuant to [the legal custody provision], . . . all matters relating to medical decisions, including who had access to the Minor Children's medical records, were exclusively reserved to Mother.

23. Pursuant to [the existing custody order], Father did not have the authority to contact the medical providers for the Minor Children to obtain medical information regarding the Minor Children.

24. By his actions in unilaterally attempting to gain access to the Minor Children's medical records by directly contacting their healthcare providers, Father intentionally violated and attempted to interfere with and circumvent [the existing custody order].

25. Pursuant to [the legal custody provision], . . . Father did not have the authority to add himself as an emergency contact on the Minor Children's medical records.

26. Pursuant to [the legal custody provision], . . . all matters relating to medical decisions, including who would be designated as an emergency contact, were exclusively reserved to Mother.

27. By his action in unilaterally causing his name to be added as an emergency contact on the Minor Children's medical records, Father intentionally violated and attempted to interfere with [the existing custody order].

Order, 3/15/24, at 2-5.[7]

_____

[7] Mother presented the following exhibits in support of her allegations.

*(Footnote Continued Next Page)*

Instantly, the crux of Father's issues on appeal is that the existing custody order "'was not definite, clear, and specific' which left 'no doubt or uncertainty' in [his] mind that what he did was 'prohibited conduct.'" Father's

---

Exhibit 1 – an e-mail forwarded to Mother on January 2, 2024, from the director of the Goddard School revealing Father's e-mail the same date alerting the school to ¶ 1(B) of the Appendix to Custody Order and attaching a copy of the same Appendix.

Exhibit 2 – a screenshot from "mytowerhealth.org" displaying the Children's emergency contacts, which included Mother and Father.

Exhibits 3 & 4 – an Our Family Wizard ("OFW") e-mail exchange between the parties on January 3 and 9, 2024, regarding a medical test performed on A.J.G.

Exhibit 5 – an OFW e-mail from Father to Mother on December 29, 2023, informing her that he scheduled "a family observation" for himself and the Children on January 12th and will need to pick them up at 11:00 a.m. from the Goddard school, *inter alia*.

Exhibit 6 – an OFW e-mail exchange between the parties on March 11, 2023, regarding the Children's height and weight and Mother alleging that Father "attempted to schedule an appt with the [Children's] pediatrician without my knowledge. . . ."

Exhibit 7 – an OFW e-mail exchange between the parties on August 23, 2023, wherein Father inquired as to the location of the Children's well-visit appointment, and Mother's response that "I have asked that you not attend their routine medical appts. . . ."

Exhibit 8 – an OFW e-mail exchange between the parties on December 6, 2023, wherein Mother stated, "At no time did I request for you to meet me at the dentist at 3 p.m. today. In the future, please do not show up at appointments against my wishes. . . ."

Exhibit 9 - an invoice from Mother's counsel reflecting legal fees related to the contempt petition.

Brief at 9. Specifically, Father relies upon the "Appendix to Custody Order" which provides, in relevant part:

**Appendix to Custody Order**

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on all parties. . . . **If any of these general rules conflict with any specific provisions of the Order, the Order shall control.**

1. In addition to the rights in the Order, all parties shall also have the following rights with respect to the child:

. . .

B. The right to be fully informed concerning the progress of the child in school and the child's medical status, **including the right to obtain information directly from the child's school or medical practitioner.**

C. The right to be informed in advance before any important decision is made concerning the child and the opportunity to participate in those decisions.

Order, 3/15/24, at Appendix to Custody Order ("Appendix"), ¶ 1 (emphasis added). Father baldly asserts that Appendix ¶ 1(B) "does not interfere with Mother's court[-]ordered right to sole legal custody." Father's Brief at 16. Thus, Father claims that he "had a reasonable belief" to perform the above-described actions, and that he did not act with "wrongful intent." *See* Father's Brief at 9, 16, 20, 23, 25.

Upon review, we conclude that Father's argument is without merit. Indeed, Appendix ¶ 1(B) "conflicts with" Mother's sole legal custody award which provides her the "exclusive" right to make medical, religious, and educational decisions for the Children. *See* Existing Custody Order, 11/14/22,

- 13 -

at ¶ 1; Appendix to Custody Order at ¶ 1. Therefore, the legal custody provision controlled, and Father was not authorized under Appendix ¶ 1(B) to take the actions at issue. We address his claims *ad seriatim*.

First, Father argues that the trial court abused its discretion in finding him in contempt for attempting to contact the Children's pediatrician in March of 2023, which relates to paragraphs 21-24 of the subject order, set forth above. Specifically, Father contends that Appendix ¶ 1(B) "grants" him the right to obtain information concerning the Children directly from their pediatrician. Father's Brief at 16. In addition, Father asserts that because he did not succeed in speaking to the pediatrician, the court should not have held him in contempt. ***See id.***

> In its Rule 1925(a) opinion, the trial court explained that
>
> (i) Father tried to schedule an appointment with a medical professional, *i.e.*, he actually took action to schedule the appointment; (ii) on a matter relating to medical decisions relating to the Minor Children that were expressly reserved to Mother; and (iii) he did so without Mother's knowledge. In sum, Father was attempting to make major medical decisions on behalf of the [C]hildren by directly communicating with and receiving information directly from medical professionals.

Trial Court Opinion, 4/15/24, at 23-24. We discern no abuse of discretion inasmuch as Father does not dispute that he called the Children's pediatrician's office on March 10, 2023, in an unsuccessful attempt "to speak with the doctor" about the Children's height and weight. N.T., 3/14/24, at 42-44. Further, the court found Father acted disingenuously, in that he claimed to have made the at-issue telephone call to gain information to better help

the Children, but acted without Mother's knowledge. **See** Trial Court Opinion, 4/15/24, at 24; N.T., 3/14/24, at 43 (Father's testimony that he is concerned "about our sons and their growth trajectory so that is why I contacted the provider to see if there were any additional steps that I can take when they are in my care to help with this issue.")  We do not disturb the court's finding.

Second, Father argues that the trial court abused its discretion in finding him in contempt for attending the Children's dental appointment on December 6, 2023, which relates to paragraphs 8-11 of the subject order.  Specifically, Father contends that the legal custody provision does not specify that he is not permitted to attend the Children's appointments.  Therefore, Father asserts that, by attending the appointment, he did not act with wrongful intent.  We conclude that Father's argument is without merit.

The trial court determined that Mother had repeatedly requested Father not appear at the Children's medical appointments, and that her decision "was sound."  **See** Order, 3/15/24, at ¶ 8; Trial Court Opinion, 4/15/24, at 26.  The court reasoned:

> Mother did not want dental appointments to present a risk of conflict in the presence of the [C]hildren, did not want to distract the [C]hildren from a visit with the dentist, and she was committed to reporting the results of the visit to Father.  Father was not satisfied with Mother's decision and unilaterally made decisions relating to the dental health of the Minor Children, *i.e.*, who can attend appointments.  That is authority that he did not have.

**Id.**  We discern no abuse of discretion.

- 15 -

Mother testified that the existing custody order requires that she enter the Children's medical appointments into the OFW calendar. *See* N.T., 3/14/24, at 21. Mother testified that she has notified Father "multiple times" that she does not want him attending the Children's medical appointments. *Id.* at 21. Mother introduced Exhibit 7, set forth above, in support of her testimony. *See id.* at 24; Exhibit 7 (an OFW e-mail exchange between the parties on August 23, 2023). Mother explained her decision in detail, as follows.

A. I am concerned for conflict in front of the [C]hildren. . . .

. . .

There was a video of a marital dispute [testified to in the prior custody trial] that was played in front of our sick child while he was in the emergency room in the past. I have not seen a change in [Father] to make me feel comfortable that something like that wouldn't happen again.

. . .

My fear is that if he attends doctors' appointments where we will be alone, just the [C]hildren and I and him in an office for a period of time before the provider comes in, that there will be inappropriate remarks or potential situations that could be unhealthy or unsafe for the [C]hildren.

*Id.* at 21-22. The trial court subsequently inquired of Mother:

THE COURT: [A]m I to understand that you believe that due to the nature of the relationship that you and [Father] have developed, having [Father] at medical appointments or dental appointment will create a risk to the [C]hildren?

THE WITNESS: That is correct.

- 16 -

THE COURT: And on the basis of that you're exercising your authority granted in [the legal custody provision] to exclude [Father] from those appointments because, in your opinion, it will create a risk of harm to the [C]hildren?

THE WITNESS: That is correct.

*Id.* at 36-37.

Mother also introduced Exhibit 8, set forth above, which was an OFW e-mail exchange between the parties on December 6, 2023, after the dentist appointment. Mother stated that she did not ask Father to attend the appointment, and she advised him of the results of the Children's routine dental check-up. Mother reiterated in the e-mail, "In the future, please do not show up at appointments against my wishes. I do not want any risk of conflict nor tension for [the Children], and unfortunately[,] when I try to communicate with you during [custody] exchanges[,] you make faces and give sarcastic responses[,] so I do not feel we are at a point where we can attend these appointments together." *Id.* at 27; Exhibit 8. Based upon the foregoing evidence, we conclude that Father is not entitled to relief on this claim.

Third, Father argues that the trial court abused its discretion in finding him in contempt for asking Mother to "permit him to take the Children to the evaluator for family observation," which relates to paragraphs 12-20 of the subject order. Father's Brief at 20. Father revealed that the evaluator is a psychotherapist named Dr. Lindenburg, who was to perform a mental health evaluation on Father and requested "to see me with [the Children] to see what

kind of bond I had with them and to see if there was anything I was doing as a parent that I could perhaps improve upon." N.T., 3/14/24, at 41-42. Specifically, Father argues that the court abused its discretion because the Children did not attend the mental health evaluation due to Mother refusing his request. *See* Father's Brief at 22.

The trial court responded to Father's asserted error as follows.

Father's third issue on appeal is a complete misstatement of what the evidence established and this court's specific finding. . . .

In December of 2023, Father wanted to have the Minor Children evaluated by a psychologist. Without notifying Mother of his intent, Father **actually** scheduled the appointment and did so at a time the [C]hildren would need to be removed from school.

On December 29, 2023, at 11:08 a.m., Father sent a message to Mother stating,

The evaluator that I'm working with **has scheduled a family observation for myself and [the Children] on January 12th.** This is taking place and I will need to pick up [the Children] at 11:00 a.m. from Goddard school. . . . If you could please let the school know as the time gets closer that would be great.

(Emphasis Added). On January 2, 2024, at 12:52 p.m., Mother sent a message to Father stating, "I did not consent to [the Children] being involved in your evaluation."

Contrary to the manner in which the issue on appeal was phrased, this was not a situation where Father was found to have violated a court order for simply asking Mother for permission to take the [C]hildren to an evaluation. At the time Father communicated with Mother, he was clearly **telling** Mother what was going to occur. The only thing Father asked for was Mother's assistance in the execution of the decision he had already made and started to implement.

Whether the Minor Children would be evaluated by a psychologist and whether they could leave school early are matters solely and exclusively reserved to Mother. Father's actions willfully and deliberately encroached upon Mother's authority.

Father had options available to him. . . . For example, Father could have asked Mother **before** he scheduled the appointment that would result in the [C]hildren being removed from school. If he was not satisfied with Mother's response, Father could have sought court authorization to proceed as he desired. Father, and Father alone, chose not to exercise the options available to him. Rather, he chose to do as he wanted to do, and that action violated [the legal custody provision] for which he was properly held accountable.

Trial Court Opinion, 4/15/24, at 26-28 (emphasis in original). The record fully supports the court's findings and conclusions of law. Thus, Father's claim fails.

Finally, Father argues that the trial court abused its discretion in finding him in contempt for contacting the Children's pediatrician's office to request that it place him "as a contact person and inquired about [accessing the Children's] medical portal," which relates to paragraphs 21, 25-27 of the subject order. Father's Brief at 22. Father again baldly asserts that Appendix ¶ 1(B) authorized him to make these requests from the pediatrician and that doing so "did not infringe upon Mother's right to sole legal custody. . . ." *Id.* at 25. In the alternative, he asserts, "If Mother [were] not going to provide [him] with the [C]hildren's medical information directly, then he had the right to contact the medical providers for said information." *Id.* As such, Father contends that he "did not act with wrongful intent." *Id.*

The trial court again states that Father's asserted error "misstates" its findings. Trial Court Opinion, 4/15/24, at 28. The court emphasizes its finding

- 19 -

in paragraph 21 that Father contacted the pediatrician's office "directly for the purposes of obtaining information about the Minor Children and causing his name to be added as an emergency contact. . . ." *Id.* The court found this to be an intentional violation and "attempt to interfere and circumvent" the legal custody provision. *Id.* at 29 (citing Order, 3/15/24, at ¶ 24).

In addition, the trial court did not make a finding with respect to whether Mother had withheld any medical information from him. Nevertheless, to the extent that Father believed Mother was withholding information, the trial court explained that the existing custody order

> created a pathway for Father to obtain information about the healthcare of [the C]hildren. In the grant of sole legal custody to Mother, this court also imposed an affirmative duty upon Mother to keep Father informed of all major events and decisions impacting the lives of the Minor Children. . . .
>
> If Father [were] not satisfied with the manner in which Mother was performing the duties assigned to her, he could ask this court to modify or clarify that portion of the order. He cannot, however, act outside the scope of the order. Nonetheless, he did, and for this reason he was found in contempt of court.

*Id.* at 29. We discern no abuse of discretion by the court with respect to Father's final claim.

In this case, the trial court is well-acquainted with the parties having presided over the underlying custody matter since its inception. The court concluded:

> After careful deliberation about the credible evidence in this case, this court determined that on four separate occasions Father had violated the [existing] custody order. Each incident constituted a separate and distinct act of contempt. In light of this court's

- 20 -

concerns about the overall well-being of the two young boys in this case, these acts of contempt could not be tolerated.

Trial Court Opinion, 4/15/24, at 29-30. Based on the totality of the record evidence, the court properly applied the relevant law to the evidence of record and reasonably concluded that Father intentionally disobeyed and/or intentionally disregarded the legal custody provision in the existing custody order. Thus, we affirm the order.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2024