**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RACHEL PALMINITERI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADAM PITTMAN | : | |
| | : | No. 798 MDA 2025 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BASIL PITTMAN AND BRENDA PITTMAN | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ADAM PITTMAN, BASIL PITTMAN AND BRENDA PITTMAN | : | |

Appeal from the Order Entered May 23, 2025
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2021-08241

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:　　　　　**FILED: NOVEMBER 21, 2025**

Adam Pittman ("Father"), and Basil Pittman and Brenda Pittman ("Paternal Grandparents") (collectively with Father, "Appellants") appeal from the May 22, 2025, custody orders denying their petitions for contempt and modifying custody, with respect to K.P. ("Child"), born in April 2018, Father's

son with Rachel Palminteri ("Mother") (collectively with Father, "Parents").[1] After review, we affirm the trial court's orders, which are supported by record evidence.

Child was born out of wedlock while Parents resided in the home of Mother's father ("Maternal Grandfather") until Father was incarcerated in August 2019, in connection with drug-related charges. Mother initiated the instant custody action in October 2021, while Father was incarcerated. In November 2021, the court awarded Mother sole legal and physical custody of Child, while affording Father reasonable phone or video contact with Child. In February 2022, Paternal Grandparents filed a petition to intervene and sought partial physical custody. In April 2022, the trial court awarded Mother primary physical custody and granted Paternal Grandparents partial physical custody once per month at a professional facility. Additionally, Father and Paternal Grandparents were each granted weekly phone calls with Child. In July 2022, the court increased Paternal Grandparents' physical custody award to one weekend per month.

In December 2022, Mother was scheduled to be incarcerated in connection with her third conviction for driving under the influence ("DUI"), and Father remained incarcerated. The trial court ordered Paternal

---

[1] As it relates to the parties' names, the caption follows that of the trial court and subject notice of appeal. However, we observe that Mother indicated the correct spelling of her last name on the record, which we note herein. **See** N.T., 5/12/25, at 158.

Grandparents and Maternal Grandfather to share physical custody of Child on an alternating weekly basis. Following Mother's prison term, she and Paternal Grandparents resumed the prior physical custody protocols.

Father was released from prison in August 2023, resided with Paternal Grandparents, and saw Child during Paternal Grandparents' period of custody. In September 2023, the court awarded Parents shared legal custody; the court granted Mother primary physical custody and Father partial physical custody on alternating weekends with additional time on weekday evenings.[2] In October 2023, the court granted a petition filed by Mother and removed Paternal Grandparents as parties in this matter because Father was no longer incarcerated. *See* Order, 10/12/23.

Father committed a parole violation and was re-incarcerated in January 2024. For a short period of time, Paternal Grandparents did not inform Mother of his incarceration and continued to exercise physical custody on his behalf. After Mother eventually learned of Father's re-incarceration, she discontinued Child's contact with Paternal Grandparents. *See* N.T., 5/12/25, at 147-48,

---

[2] A subsequent January 3, 2024, order, allowed the prior order to remain in effect with modifications to, *inter alia*, vacation, transportation, and telephone contact.

175-78. As a result of her allegations of harassment,[3] Mother sent Paternal Grandparents "no contact" letters in April 2024. *See id*. at 176, 179-80.

In December 2024, Paternal Grandparents filed a petition to intervene and a separate petition for modification requesting the court award Paternal Grandparents partial physical custody of Child two weekends per month with shared transportation and "reasonable" phone contact with Child.[4] Petition for Modification, 12/19/24, at ¶ 14. Additionally, Father sought regular phone and video contact with Child during his continued incarceration and requested Mother's cooperation with scheduling. *See id*. at ¶ 15. In January 2025, the court granted Paternal Grandparents' intervention petition pursuant to 23 Pa.C.S.A. § 5325(2).

Later that month, after a conciliation conference failed to resolve the parties' issues, the court entered an interim custody order ("the existing custody order") awarding Parents shared legal custody. *See* Order, 1/28/25, at ¶ 1. The court awarded Mother primary physical custody and Paternal Grandparents partial physical custody, as follows:

_____

[3] Mother testified that Paternal Grandparents contacted her work and children and youth services and also contacted her probation officer with allegations she was drinking and driving; Paternal Grandmother confirmed that she contacted Mother's work and her probation officer. *See* N.T., 5/12/25, at 144-46, 154, 179-80.

[4] At the hearings in their petitions in May 2025, Paternal Grandparents additionally requested two non-consecutive weeks of vacation, as well as shared major holidays and alternating non-major holidays. *See* N.T., 5/12/25, at 79-85.

- 4 -

a. Starting on January 24, 2025, Paternal Grandparents shall have custody on odd-numbered months (January, March, May, July, September and November) on the fourth weekend of each month from Friday at 6:00 p.m. until Sunday at 6:00 p.m.

b. Paternal Grandparents shall have custody on even-numbered months with the exception of August (i.e. February, April, June, October and December) on the second and fourth weekend of each month from Friday at 6:00 p.m. until Sunday at 6:00 p.m.

*Id*. at ¶ 2(a), (b). Additionally, the court granted Paternal Grandparents one week of vacation in August and holiday time at Christmas, Thanksgiving, and Father's Day. *See id*. at ¶¶ 2(c), 3.

As to communication with Child, the court provided:

Father shall be entitled to one telephone call per week with [Child]. . . . To the best of her ability, Mother shall facilitate the telephone call between Father and [Child].

Mother and Father shall cooperate to make arrangements for Father to have one video call with [Child] each week.

Paternal Grandparents shall be entitled to one telephone call of up to ten (10) minutes with [Child] each Wednesday between 6:00 p.m. and 7:00 p.m.

The custodial parent shall not monitor or interrupt the communication between [Child] and the non-custodial party or parties. . . .

*Id*. at ¶ 5.

In addition, related to communication between the parties, the court provided that:

Mother shall send Paternal Grandparents a copy of schedules for any events in which [Child] participates, including school events and extracurricular activities. . . .

* * * * *

> Mother shall communicate directly with Father about [Child's] doctor and dentist appointments, [Child's] education, and extracurricular activities by mail. Unless otherwise agreed upon by Mother and Father, Mother shall provide Father with copies of all documentation that she receives from [Child's] school and doctors by mail. . . .

*Id*. at ¶ 9.

Finally, also relevant to this appeal, in relation to consideration of the welfare of Child, the court set forth, in relevant part:

> The custodial party or parties shall accommodate the non-custodial parent in the event that a special occasion arises, such as a wedding, funeral, family reunion, significant religious event, or similar type of event, that requires an alteration of the custody schedule to allow [Child] to participate in those events. The parties shall mutually decide on whether make-up time to the other party or parties is appropriate as a result of the altered custody schedule. The party or parties who is asking for the accommodation for the special event shall give the other party one . . . week notice of the request for accommodation or as much notice is as reasonably possible if providing one . . . week notice is not possible.

*Id*. at ¶ 8.

In March 2025, Appellants filed a petition for contempt alleging Mother violated the existing custody order by: (1) failing to cooperate with prison authorities in authorizing Child to participate in video calls with Father; (2) not forwarding school and medical records to Father; and (3) inappropriately monitoring Child's phone calls with Paternal Grandparents. Appellant's Petition for Contempt, 3/19/25, at ¶¶ 7, 11-13, 15. The next month, Appellants filed a second petition averring Mother had further violated the existing custody order by withholding custody of Child from Paternal

Grandparents on the weekend of April 11-13, 2025. *See* Second Petition for Contempt, 4/17/25, at ¶¶ 9-20.

On May 12, 2025, and May 19, 2025, the court, which had been assigned to matters relating to these parties for three and one-half years, held hearings on Appellants' petitions for contempt and modification.[5]

At the hearing, Appellants presented the testimony of Alexis McDonald ("Ms. McDonald"), Father's corrections counselor, and their own testimony. Mother testified on her own behalf. The court also heard the testimony of Brandon O'Donnell, Esquire ("Attorney O'Donnell"), the seven-year-old Child's guardian *ad litem* ("GAL").[6]

In a series of three orders dated May 22, 2025, and entered on May 23, 2025, the court: (1) denied Appellants' petitions for contempt; (2) denied Appellants' petition for modification; and (3) set forth its final custody award. In the final of these three orders, the court awarded Mother sole legal custody

---

[5] Father participated via video from a state correctional institution.

[6] A summary of the relevant testimony of the witnesses is included in the discussion of Appellant's legal issues. However, our close review of the record discloses the parties have not exhibited mutual respect, resulting in a detrimental effect on Child. As Attorney O'Donnell testified, "[T]here's something . . . wrong. [Child] is missing something at this point." Attorney O'Donnell further observed, "I will say one of the things that stuck out to me in this case is the animosity between . . . the grandparents and the mother. It's -- it -- it was disheartening 2, 2 to 3 years ago when I was involved, and it's even more so now, the fact that as the parties get older, they still just can't put aside their personal differences for the child." N.T., 5/19/25, at 38.

and required Mother to "provide notification, within a reasonable timeframe under the circumstances, via written communication to Father regarding all major educational and medical decisions as well as events." Order, 5/23/25, at ¶ 1. The court further awarded Mother primary physical custody, with partial physical custody to Paternal Grandparents, in pertinent part, as follows:

> a. Paternal Grandparents shall have custody on one overnight per month on the fourth weekend of each month . . . . It will be presumed that the Paternal Grandparent[s]' custody will be from Friday until Saturday, however Mother may modify it to Saturday until Sunday any given month by giving the Paternal Grandparents 30 days' written notice.

*Id*. at ¶ 2. Additionally, the court granted Paternal Grandparents custody for a two-day post-Christmas period beginning on December 27th. ***See id***. at ¶ 3.

Regarding telephonic and other communication, the Order provided:

> Father shall be entitled to one telephone call per week with [Child]. . . . on each Tuesday between 6:15 p.m. and 8:15 p.m. To the best of her ability, Mother shall facilitate the telephone call between Father and [Child].

> Mother and Father shall cooperate to make arrangements for Father to have one video-call with [Child] every other week.

> Paternal Grandparents shall be entitled to one telephone call of no longer than (5) minutes with [Child] every other Wednesday . . . on the opposite week of Father's video calls.

> The custodial parent shall not unreasonably interrupt the communication between [Child] and the non-custodial party or parties. The parties shall use common sense in communication with [Child] in that they shall not make their communication last

for such a length of time or be so frequent that it interrupts the custodial parent's right to enjoy custodial time with [Child].

*Id*. at ¶ 5.

In an attachment to the order denying Appellants' petition for modification, the trial court addressed each of the mandatory best interest factors set forth in Section 5328(a) of the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, and the factors pertaining to grandparents pursuant to Section 5328(c)(1).

Appellants filed a timely notice of appeal with respect to the court's final custody order on June 16, 2025. Both Appellants and the trial court ultimately complied with Pa.R.A.P. 1925.[7]

On appeal, Appellants' raise the following issues for our review:

I. Whether the trial court committed an error of law and/or abused its discretion by denying Appellants' two petitions for contempt . . . by failing to find [Mother] in contempt, and by failing to impose sanctions for her willful noncompliance with the court's orders?

---

[7] Appellants failed to file a contemporaneous concise statement of errors complained of on appeal in violation of Pa.R.A.P. 1925(a)(2)(i) and (b). However, after, the trial court directed Appellants to file a concise statement within 21 days, Appellants timely complied. The trial court found Appellants' issues waived for failure to file a contemporary 1925(b) Statement. *See* Trial Court Opinion, 6/18/25. We decline to do so. *See In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009) (declining to find waiver based on failure to file a 1925(b) statement concomitantly with a children's fast track appeal absent prejudice to the parties and in furtherance of the goal of expediting disposition of children's fast track cases).

II. Whether the trial court committed an error of law and/or abused its discretion by denying Appellants' petition for modification and instead granting [Mother] sole legal custody and drastically reducing [Appellants'] contact with[,] and custodial periods of[,] [C]hild?

Appellants' Brief at 5 (unnecessary capitalization eliminated).

In their first issue, Appellants challenge the trial court's finding Mother was not in contempt of the January 28, 2025 custody order. *See* Appellants' Brief at 11-46. These claims relate to the allegations Mother: (1) failed to cooperate in arranging video visits between Father and Child; (2) withheld educational and medical documentation from Father; (3) inappropriately monitored Child's calls with Paternal Grandparents; and (4) withheld Child from Paternal Grandparents. Appellants argue that by not finding Mother in contempt, the court ignored the provisions of its own order and cast doubt on future enforcement efforts. *See id*. at 45-46. Specifically, Appellants state,

[t]he court is sending the message that a party does not have to follow a court order if the party does not want to or if it is too inconvenient. We are left with utter chaos if parties are aware that court orders do not need to be followed and there are no consequences to a party's utter disregard for the terms of an order.

*Id*. at 46.

Paternal Grandparents' testimony at the hearings asserted Mother does not treat them with courtesy or consideration, Mother cut off their contact with Child for one year, Mother's boyfriend is impolite to them and uses profanity in Child's presence, and Mother's boyfriend has an OnlyFans account which

they fear might expose Child to explicit sexual content.  *See* N.T., 5/12/25, 49-151.[8]

> With respect to contempt, we have held as follows:
>
> In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion.  This Court must place great reliance on the sound discretion of the trial court when reviewing an order of contempt.
>
> To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence.  Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he[, or she,] is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Rogowski v. Kirven*, 291 A.3d 50, 57 (Pa. Super. 2023) (internal citations, brackets, and quotation marks omitted).  Our case law provides that we must construe any ambiguities in the underlying order in favor of the defendant in a contempt context:  "Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant."  *Hanbicki v. Leader*, 294 A.3d 1234, 1241 (Pa. Super. 2023).

We address each of Appellants' arguments individually.

a. Video Calls

---

[8] Attorney O'Donnell testified Child told him Mother and her boyfriend fight, Child likes seeing Paternal Grandparents but does not like spending nights at their home, and Child loves and misses Father.  *See* N.T., 5/19/25, at 36.

Appellants assert Mother refused to authorize video calls with Father in contravention to the existing custody order, which stated, in relevant part, "Mother and Father shall cooperate to make arrangements for Father to have one video-call with [C]hild each week." Order, 1/28/25, at ¶ 5; **see also** Appellants' Brief at 13-25. Appellants contend Mother "refused to authorize [C]hild to be added to Father's visitor list to enable video calls to be scheduled between [C]hild and Father." Appellants' Brief at 13. These claims relate to a correctional facility form, DC-313, sent to Mother by Alexis McDonald, Father's corrections counselor at SCI-Forest, requiring Mother to approve Child's addition to Father's visitor list. Appellants further allege that Mother failed to log in for subsequently scheduled video calls. **See id**. at 22-25.

At the hearing, Ms. McDonald testified the DC-313 form ("the form") must be completed by the parent or guardian before SCI-Forest will permit the minor to be added as a visitor permitted to participate in video visits. **See** N.T., 5/12/25, at 5-10. Ms. McDonald stated four of the forms were mailed to Mother from January to April 2025, three to one address, and the last to a different address. **See** N.T., 5/12/25, at 6-8, 13-14.

Mother testified she completed the form in January 2025. **See** N.T., 5/12/25, at 170-72, 206.[9] She explained she objected because the form only

_____

[9] Mother testified she did not receive two of the forms sent by SCI-Forest, because they were to her prior address; on cross-examination she stated that
*(Footnote Continued Next Page)*

referenced ***in-person*** visitation at the correctional facility and was devoid of any mention of video visits. ***See id***. at 172 ("When I . . . filled that form out, it was talking about in person visits at the facility. So[,] I did object to having [C]hild added to the list for in-person visitation").[10]

The text of the form states that the person who is the subject of the form is "approved as authorized visitor and be permitted to visit [the prisoner] ***at the above facility***." ***See*** DC-313 (emphasis added). Mother testified she "was not aware signing that form was going to stop [Child] from having video visits." N.T., 5/19/25, at 11.[11] Ms. McDonald acknowledged video visits were "fairly new," and the form did not mention video visits. ***See*** N.T., 5/12/25, at 10, 15.

---

the prior address is where her father and his wife live. ***See*** N.T., 5/19/25, at 9-10, 14.

[10] Attorney O'Donnell, Child's GAL, testified he was "very adamant" Child was not to visit Father in prison. ***See*** N.T., 5/19/25, at 35.

[11] Mother testified she first learned in February 2025 that a DC-313 form was, in fact, required for video visits. ***See id***. at 6, 11-12. When she learned Child was not approved for video visits, she sent emails and placed phone calls to SCI-Forest to have Child approved for those visits. ***See*** N.T., 5/12/25, at 173; N.T., 5/19/25, at 7. When Mother received a copy of the form at her current address, she testified she completed it in May 2025, and approved Child to be added to Father's visitor list for ***video calls*** but not in-person visits. ***See id***. at 10-13. Father testified Mother subsequently scheduled three video calls. ***See id***. at 22-23.

Concerning Child's failure to appear on video calls, Mother testified she set up an online account and scheduled visits with the correctional facility. *See* N.T., 5/12/25, at 171. However, because Mother did not approve of Child's addition to Father's visitor list for in-person visits, Child was not approved as a visitor, and the correctional institution rejected the scheduled visits. *See id*. at 12, 174-75. Mother conceded that, as a result, she did not log on at the time of the scheduled visits due to the lack of approval from prison authorities; she stated, "I literally can't until [Child] is approved. You are not allowed to do that." N.T., 5/19/25, at 14-15.

The trial court determined Appellants failed to prove Mother acted volitionally and with wrongful intent by executing the form objecting to Child's addition to Father's visitor list and failing to log in for scheduled video visits. *See* Order (contempt), 5/23/25, Exhibit A, at 5. The court emphasized that the form only addressed *in-person* visitation at the correctional facility and did not mention video visits. *See id*. Moreover, Mother took the additional steps to create an online account and schedule visits. *See id*. The court excused Mother's failure to log in for some of the scheduled video visits because she received notification from SCI-Forest that they would not proceed. *See id*.

The record supports the trial court's finding Mother was not in contempt, even if she was not particularly cooperative. In particular, the form was ambiguous, Mother later authorized video visits for Child and Father, and

Mother had been told in advance by the prison that the calls she received would not be permitted. We have no basis to overturn the trial court's ruling based on its factual findings. ***See Hanbicki***, 294 A.3d at 1231; ***Rogowski***, 291 A.3d at 57.

b. School and Medical Records

Appellants assert Mother failed to send Father medical and education information as required by the January 28, 2025, order, which provides, in relevant part, "Mother shall communicate directly with Father about []Child's doctor and dentist appointments, [C]hild's education and extra-curricular activities by mail. Unless otherwise agreed upon by Mother and Father, Mother shall provide Father with copies of all documentation that she receives from [C]hild's school and doctors by mail. . . ." ***See*** Appellants' Brief at 25-32. Mother's knowledge of this provision is undisputed. ***See*** N.T., 5/12/25, at 207-08.

Appellants assert Mother failed to provide Father documentation concerning Child's education and health:

> [t]he first mail Father received was in late March of 2025, which included a school report for one term. . . . Since the time of the [c]onciliation on January 16, 2025, and as of the time the March 19, 2025[,] Petition for Contempt was filed, Father had not received a single piece of mail or any communication whatsoever about [C]hild nor copies of [C]hild's records and documentation from Mother. . . . When Mother did finally send some mail to Father, beginning on or about March 18, 2025, the records were incomplete.

- 15 -

Appellants' Brief at 25 (citations omitted). Appellants indicated the school report was for a single term and included two of seven pages. *See id*. at 28. Additionally, Appellants argue Mother failed to communicate with, and send, Father a copy of Child's individualized education plan ("IEP") and disciplinary information regarding Child, which Father later discovered on his own. *See id*. at 26-28.[12] Appellants argue such actions "exhibited [Mother's] volitional behavior and her willfulness in failing to comply with the order. The evidence . . . established that Mother made a deliberate decision for the wrongful purpose of withholding important information from Father despite knowing she was required to provide the information pursuant to the order." Appellant's Brief at 31-32. Father further testified at the hearing Mother failed to communicate with him about Child. *See* N.T., 5/12/25, at 41-42.

The trial court found that Mother was not in violation of paragraph 9 of the existing custody order because she had provided information to Father. *See* Order (contempt), 5/23/25, at Exhibit A, at 8-9. The court highlighted the fact Father received some records by the time of the subject hearing. *See id*. Although Mother did not completely inform Father of all information related to Child's education, the court credited Mother's stated belief that she

---

[12] The certified record reflects that Child underwent an IEP assessment process from January 2025 until April 2025. This assessment resulted in the institution of an IEP as of April 23, 2025. *See* N.T., 5/19/25, at 26-27. The record further indicates that Child's school documented six disciplinary incidents involving Child from October 2024 to March 2025. *See id*. at 19-21.

was only required to send report cards to Father. ***See id***. Thus, the court concluded that Mother had not acted with wrongful intent.

The record supports the trial court's findings. Mother testified that in February 2024, she sent Father Child's "up-to-date school record of his -- how his classes have been going, his dentist appointment, which was his yearly checkup, and then also his doctor's appointment for his yearly checkup." N.T., 5/12/25, at 181. Additionally, in March 2025, Mother mailed Father a report card, documentation from a March 3, 2025, dentist appointment, and a February 2025 report from a medical examination.[13] ***See*** N.T., 5/19/25, at 16-18; ***see also*** Appellants' Exhibits 5 & 6. Mother explained the report card included the pages displaying Child's grades. ***See*** N.T., 5/19/25, at 23-24. Mother admitted she did not send Child's IEP or disciplinary records but testified that she did not know she was required to do so. ***See*** N.T., 5/12/25 at 182; N.T., 5/19/25, at 21, 31.

Although Mother could have been more accommodating to Father and furnished him with more information, we cannot find the trial court abused its discretion by denying relief. The existing custody order does not indicate that it is retrospective, and it lacks specificity as to which documents Mother is to send. The order states that "Mother shall provide Father with copies of all

---

[13] Though mailed in March, Father's receipt was delayed because Father's mail must go through inspection at a clearinghouse in Florida before being distributed to his state correctional institution. ***See*** N.T., 5/12/25, at 183.

documentation that she receives from the child's school and doctors **by mail**." Order, 1/28/25, at 9 (emphasis added). The order is thus ambiguous as to whether the term "by mail" refers to the documents received by Mother, or the method by which Mother is to forward such items to Father. Further, the order provided no time constraint for Mother to provide such documentation. **See Hanbicki**, 294 A.3d at 1231.

Additionally, the IEP was not finalized until April 23, 2025. The evidence does not show Mother intentionally withheld that document from Father; she testified she had not yet been able to print the paperwork. **See** N.T., 5/19/25, at 27 ("I have not got around to that, no. It's a lot of papers to print out at the moment."). For these reasons, we perceive no abuse of discretion in the trial court's holding.[14]

c. Phone Calls

Next, Appellants assail Mother's alleged interruption and interference with phone calls in violation of the existing order, which provides, in part, "The custodial parents shall not monitor or interrupt communication between []

---

[14] Appellants assert a violation of paragraph 1 of the existing order relating to major health, education, and religious decisions. **See** Appellants' Brief at 12 citing Order, 1/28/25, at ¶ 1. They further argue Mother was in contempt for failure to provide Paternal Grandparents information regarding Child's extracurricular and school events. **See** Appellants' Brief at 34-35; citing Order, 1/28/25, at ¶ 9. Appellants did not make these assertions in either of their petitions for contempt and the trial court did not address them. The claims are therefore waived. **See** Pa.R.A.P. 302(a).

Child and the non-custodial party or parties. . . .” *See* Appellants' Brief at 32-33, citing Order, 1/28/25, at ¶ 5. Appellants specifically assert that

[d]uring [Paternal] Grandparents' phone calls with [C]hild, in the background in Mother's home are Mother and other people talking, interrupting the calls, saying shush to [C]hild, saying things to [C]hild which has caused [C]hild to react saying he does not want to talk, and Mother has picked up the phone during one of the calls and began screaming and berating [Paternal] Grandparents in the presence of [C]hild.

Appellants' Brief at 32. Rather, than being a "quiet bystander" during the calls, Mother, according to Appellants,

was speaking to [C]hild, allowing others in the household to speak to [C]hild, was influencing whether he should continue the call, and was picking up the phone to yell at and hang up on [Paternal] Grandparents. Mother's actions in interfering with and interrupting the calls was a volitional and willful, purposeful act by Mother, again in her wrongful attempts to limit [C]hild's contact with [Paternal] Grandparents.

*Id*. at 33. Father testified that calls he received when Child was with his parents were far different and better than when Child was with Mother *See* N.T., 5/12/25, at 33, 43. Paternal Grandfather testified Child "was being told to say certain things," and that on one occasion, Mother grabbed the phone and started screaming. *Id*. at 75-76.

Mother acknowledged she supervised Child's use of the phone. *See* N.T., 5/12/25, at 203 ("I do stand present. My child will do everything on my phone and get into every app other than talk on the phone. So, yes, I will stand there just to ensure my child's not opening up a bunch of apps on my phone."). She further explained her supervision of Child was necessary to

effectuate these phone calls. Mother described Child as "[n]ot really excited to talk. I think he just wants to play. He's seven. He [is] too energetic to sit still and have a lengthy phone call." *Id*. at 167. She continued, "[A] [c]ouple minutes and after that, you lose him. He . . . does not care to be on a phone for a significant amount of time." *Id*. at 168.[15]

Mother denied interfering with the calls, although she acknowledged one incident where she re-directed Child to pay attention because he was playing with his tablet during a phone call with Paternal Grandparents that escalated into threats of lawyer involvement. She testified she told Child to stop playing with his tablet and then heard Grandparents say, "[C]all your lawyer. Call your lawyer.["] *Id*. at 168.

The trial court found the evidence did not establish Mother interrupted or interfered with Child's phone calls, and declined to characterize Mother's supervision of the seven-year-old Child's use of the phone as "improper monitoring." Order (contempt), 5/23/25, at Exhibit A, at 9. Because the record supports the trial court's findings, we discern no abuse its discretion.

d. April 11-13, 2025: Child's Birthday

Appellants' final contempt claim asserts Mother violated the existing custody order by withholding Child the weekend of April 11-13, 2025, which

---

[15] Attorney O'Donnell agreed with Mother about Child's tolerance for phone calls. *See* N.T., 5/19/25, at 38 (Attorney O'Donnell testifies, "[N]o seven-year-old wants to be on the phone").

included Child's birthday. *See* Appellants' Brief at 36-45 (citing Order, 1/28/25, at ¶ 2(b), which provided Paternal Grandparents custody on that weekend). Appellants further allege "[n]o agreement was ever reached between the parties to make any changes to the custody schedule[,]" and Mother was obligated to follow the order. *See* Appellant's Brief at 39. Paternal Grandfather testified Mother offered a visit the following Wednesday through Friday instead, but those dates were inconvenient for Paternal Grandparents, and Mother had a history of refusing to allow Appellants contact with Child on his birthday. *See* N.T., 5/12/25, at 64-67.

> Paragraph 8 provides, in pertinent part, as follows:
>
> The custodial party or parties shall accommodate the non-custodial parent in the event that a special occasion arises, such as a wedding, funeral, family reunion, significant religious event, *or similar type of event*, that requires an alteration of the custody schedule to allow [Child] to participate in those events. The parties shall mutually decide on whether make-up time to the other party or parties is appropriate as a result of the altered custody schedule. The party or parties who is asking for the accommodation for the special event shall give the other party one . . . week notice of the request for accommodation or as much notice is as reasonably possible if providing one . . . week notice is not possible.

Order, 1/28/25 (emphasis added).

Appellants assert paragraph 8 "does not include children's birthday in the list of special occasions that alter custody obligations, because "regular birthday[s] . . . occur[] every year, and . . . Mother was the one who was completely in control about when she chose to schedule the party." Appellants' Brief at 41. They further argue if paragraph 8 encompasses Child's

- 21 -

birthday party, the birthday party did not encompass the entire weekend and Mother acted unilaterally and did not file a motion prospectively and bring the issue before the court. *See id*. at 41-43.

Mother testified Child wanted to stay at her home for his birthday party, on Saturday afternoon, April 12th, 2025, and she withheld Child for that reason. Mother testified she contacted Paternal Grandparents through counsel ten days prior and offered Paternal Grandparents make-up time on at least three other dates, and offered to split the birthday weekend, all of which offers Paternal Grandparents rejected. *See id*. at 161, 196-97. Mother testified that Paternal Grandparents proposed to take Child on Friday, April 11, 2025, and Mother could retrieve him on April 12th for his party and then bring him back to them after the party for the remainder of the weekend. Mother testified the proposal was impractical, because she did not have a driver's license. *See id*. at 198-99. Mother also testified Child asked his Grandparents, three days before, for permission to stay home for his birthday and they refused. *See* N.T., 5/12/25, at 162-65, 201.

The trial court found Mother's actions were "justifi[ed]" and "in the best interests of the child." Order (contempt) 5/23/25, at Exhibit A, at 7. The court further found Mother "offered several option[s] for make[-]up time demonstrating that her goal was not to deprive [Paternal] Grandparents of custodial time." *Id*. The trial court deemed "patently unreasonable" Paternal Grandparent's counter-proposal that Mother allow Child to go to Paternal

Grandparents the previous day, retrieve Child from Paternal Grandparents for his party, and then return him to them after the party; that plan would require multiple, lengthy Uber trips in one day.[16] Further, Mother had offered Paternal Grandparents a make-up visit the next weekend and offered to split the weekend. *See id*. at 6. *See* Order (contempt) 5/23/25, at Exhibit A, at 6-7.

We conclude the court did not abuse its discretion in determining that Child's birthday was a special occasion within the meaning of paragraph 8, which expressly provides for accommodation for a "similar type of event" to a "wedding, funeral, family reunion, [or] significant religious event[.]" Given our standard of review and Mother's compliance with the notice requirement of the order, we discern no abuse of discretion with the trial court's determination "Mother correctly considered the welfare of the child, gave timely notice to [Paternal] Grandparents of a special event in the form of the Child's own birthday party, and offered make[-]up time." Order (contempt) 5/23/25, at Exhibit A, at 7. As such, Appellants' claims with respect to the trial court's contempt findings are without merit. *See Rogowski*, 291 A.3d at 57.

## II. Modification

In their second issue, Appellants challenge the trial court's denial of their petition for modification and custody determination. Appellants contest: (1)

---

[16] Paternal Grandfather testified he and Grandmother live 48 minutes away from Mother "if the traffic is good." N.T., 5/12/25, at 71, 79, 84, 104.

the reduction in Paternal Grandparents' partial physical custodial time, holiday time, and vacation time with Child; (2) the reduction in Paternal Grandparents' phone calls and Father's video calls with Child; and (3) the award of sole legal custody to Mother.[17]  **See** Appellants' Brief at 73, 85-87.  Appellants' nearly 40-page argument challenges the trial court's findings with respect to the Section 5328(a) best interest factors, as well as the Section 5328(c) factors relating to grandparents, asserting they are unreasonable, unsupported by the facts and evidence of record, and contrary to Child's best interests.  **See** Appellants' Brief at 49, 68, 86-87.  Most notably, Appellants argue that the factors at section 5328(a)(2.3) and (16) should have favored Paternal Grandparents due to Mother's lack of support for ongoing, regular contact.  **See id**. at 58-59, 65-66.  Appellants further assail the trial court's consideration of section 5328(c).  **See id**. at 49-52.  Appellants reject the trial court's attribution of Paternal Grandparents' "significant contact" with Child to Mother.  **Id**. at 49-50.  They further contend that the record is devoid of any negative impact on Mother's relationship with Child because of Paternal Grandparents' request.  **See id**. at 52.  Rather, the court "erroneously focus[ed] on the perceived hardship to Mother."  **Id**.

---

[17] Appellants waived any argument related to Father's contact for failure to develop any argument related thereto.  **See In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa. Super. 2017) (holding this Court will not review an appellant's claim unless it is developed in the argument section of an appellant's brief and supported by citation to relevant authority).

We review a custody order for "a gross abuse of discretion." ***Rogowski***, 291 A.3d at 60-61.  An abuse of discretion occurs only if the trial court overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. ***Id***.  Further, our standard of review requires us to accept trial court findings supported by competent evidence of record.  Our role does not permit us to make independent factual determinations; we must defer to the credibility and weight assessments of the trial court, who saw and assessed the witnesses first-hand.  We are, however, not bound by the trial court's deductions or inferences from its factual findings.  We may reject these where the record evidence shows them to be unreasonable or an error of law. ***See id***. at 60-61.  Finally, "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." ***King v. King***, 889 A.2d 630, 632 (Pa. Super. 2005) (citation omitted).

Under the Act, grandparents may seek partial physical custody under the circumstances presented in this case. **See** 23 Pa.C.S.A. § 5325(2)(i)-(ii). Grandparents seeking partial custody bear the burden 'to demonstrate that partial custody or visitation in their favor is in the child's best interest and will not interfere with the parent-child relationship.'" ***D.R.L. v. K.L.C.***, 216 A.3d

276, 279 (Pa. Super. 2019) (citation omitted). In all custody cases, including those brought by grandparents, the paramount concern is the best interests of the child, based on consideration of all factors which legitimately influence the child's physical, intellectual, moral, and spiritual well-being. *See id*. Accordingly, the Act sets forth factors that a court must consider as part of any custody determination, including modification of a custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id*. at 468 (citation omitted).

The factors the court is required to consider are as follows:

**§ 5328. Factors to consider when awarding custody**[18]

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1), and (2.2) which affect the safety of the child, including the following:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or

_____

[18] Effective August 13, 2024, and therefore applicable to this case, our General Assembly enacted significant amendments to the custody factors (known as 'Kayden's Law')." *Velasquez v. Miranda*, 321 A.3d 876, 886 n.6 (Pa. 2024). Kayden's Law directs additional focus to the child's safety. *See id*.

Effective August 29, 2025, our General Assembly further amended Section 5328(a). *See* 2025 Pa. Legis. Serv. Act 2025-11 (H.B. 378). Those amendments are *inapplicable* to this case. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (concluding the date of commencement of the hearing determines whether the amendments to the Act apply).

current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Further, as to grandparents, Section 5328(c) requires deliberation of the following additional factors:

(1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent- child relationship; and

(iii) whether the award is in the best interest of the child.

(2) In ordering partial physical custody or supervised physical custody to a parent's parent or grandparent who has standing under section 5325(3), the court shall consider whether the award:

(i) interferes with any parent-child relationship;

and

(ii) is in the best interest of the child.

23 Pa.C.S.A. § 5328(c).

When deciding an award of custody, the court must thoroughly analyze the best interests of the child based on the factors the Act sets forth. Although the court must consider all of the sixteen "best interest" factors and the three factors pertaining to grandparents, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **D.R.L.**, 216 A.3d at 280; **see also Wilson v. Smyers**, 284 A.3d 509, 516–17 (Pa. Super. 2022).

Instantly, the trial court addressed the best interest factors pursuant to Section 5328(a). **See** Order (modification), 5/23/25, at Exhibit B. The court found Section 5328(a)(2.3), (4), (6), (11), (13), and (16) weighed in Mother's favor and the remaining factors not applicable or neutral. The court found factors (2.3) and (16) to be relevant to Paternal Grandparents' overstepping and impinging upon Mother's parental role.

Regarding Section 5328(a)(2.3), the court found Paternal [G]randparents "demonstrated a lack of understanding with regard to parental autonomy and their role as grandparents." **See id**. It found that during the litigation, Mother has offered reasonable amounts of partial custody to Paternal Grandparents, but "[t]heir failure to understand and recognize their role[] results in a failure to encourage [C]hild's continuing contact with Mother[] and negatively impacts the mother-child relationship." **Id**.

(specifically citing Paternal Grandparents' conduct concerning accommodations for Child's birthday party as demonstrative of Paternal Grandparents' overreach).

Regarding Section 5328(a)(16), the court found Mother does not oppose Paternal Grandparents' regular, ongoing contact to maintain their relationship with [C]hild," but "objects to their increase in time demands and seeking to stand in the shoes of incarcerated Father." Order (modification), 5/23/25, at 1-2. Further, "[Paternal G]randparents have not extended a reciprocal supportive approach and instead their conduct . . . undermines Mother's attempts to be with [C]hild . . . ." The trial court concluded Paternal Grandparents' pursuit of "hyper-technical contempt findings is destructive and interferes with the mother-child relationship and is not in [C]hild's best interest." *Id*.

The trial court reviewed the additional factors relevant to Paternal Grandparents pursuant to Section 5328(c) and determined that given the circumstances, Mother provided them with significant access to the Child. As to these additional factors, the court found Mother is agreeable to continuing the bond and relationship among Child and Paternal Grandparents but Paternal Grandparents' request for partial custody "would be unreasonable under the circumstances where [C]hild is now school[-]aged and developing peer relationships and is old enough to be engaged in community-based activities and [Paternal] Grandparents live 45-50 minutes away from [C]hild's

school." Order (modification), 5/23/25, at 1-2 (noting Paternal Grandparents sought holidays, 14 days of vacation per year, and custody every other weekend). The court also found Paternal Grandparents sought an award of partial custody "that negatively impacts the mother-child relationship[,]" and noted Mother would be confronted with additional struggles as a single parent if required to provide transportation for [Paternal] Grandparents' visitation," and "will lose out on precious memories during [h]olidays if [Paternal] Grandparents are awarded their request to split [h]olidays with Mother which interferes with her relationship with her child." **Id**. The trial court stated, "[M]other should not lose out on half the weekends in a year's time where [C]hild is bonded with [Paternal] Grandparents and an award of ongoing contact that is less than every other weekend will allow for a continuation of the [g]randparent[-g]randchild bond and relationship." **Id**. The court concluded, "[W]hen the best interest factors are applied . . ., the request of [Paternal] Grandparents is not in [C]hild's best interest." **Id**.[19]

---

[19] At the conclusion of the hearings, the trial court stated, "[M]other does not oppose the grandparents from having ongoing contact. She's not saying, no, they can't have contact or I'll decide . . . when they have contact, contact wi[ll] be at my discretion when I feel like scheduling it. That is not what she's saying." N.T., 5/19/25, at 40. The court further stated, "[I]'ve never seen an order scrutinized so strictly against a parent. And I find that almost unconscionable to be honest." **See id**. at 41.

In large part, Appellants' arguments dispute the record support for the trial court's factual findings and challenge its determinations regarding credibility and weight of the evidence. *See id*. at 49-73. Our standard of review precludes our challenge to those determinations which have record support. *See Rogowski*, 291 A.3d at 60-61. As noted, we consider whether, giving due deference to the trial court's weight and credibility determinations, the court erred or abused its discretion. *See King*, 889 A.2d at 632. Further, it is within the purview of the trial court to determine which statutory factors "are most salient and critical." *E.B.*, 209 A.3d at 460.

The record supports the trial court's determination. Mother expressed her willingness to maintain Child's ongoing contact with Paternal Grandparents. *See* N.T., 5/12/25, at 185-86. However, both Mother and Attorney O'Donnell, Child's GAL, recounted Child's opposition to extended overnight stays, and Attorney O'Donnell emphasized that Child is now school age. *See* N.T., 5/12/25, at 185; N.T., 5/19/25, at 36-38. Our Supreme Court has observed the state's interest in protecting beneficial grandparent-child relationships but has refused to honor that relationship at the expense of a fit parent's decision and via the courts. *See Hiller v. Fausey*, 904 A.2d 875, 886 (Pa. 2006) (footnote omitted) (acknowledging the general benefits of Grandparent relationships, but stating, "[W]e cannot conclude that such a benefit always accrues in cases where grandparents force their way into

grandchildren's lives through the courts, contrary to the decision of a fit parent").[20]

Here, the trial court adequately addressed each Section 5328(a) best interest factor and Section 5328(c)(1) factors related to grandparents contemporaneously with its custody order. *See* Order (modification), 5/23/25, at Exhibit B. The court carefully and thoroughly considered Child's best interests, and the evidence supports the court's custody decision. As such, we will not disturb it. *See Rogowski*, 291 A.3d at 60-61.

To the extent Appellants further raise arguments of bias, application of the improper presumption, and violation of due process, *see* Appellants' Brief at 78-80, Appellants did not raise those assertions in their Rule 1925(b) statement and thus waived them. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii); *M.Z.T.M.W.*, 163 A.3d at 466. Such arguments are waived as they are devoid of meaningful arguments supported by relevant authority. *See M.Z.T.M.W.*, 163 A.3d at 465-66.

---

[20] In this regard it is notable that when asked if he would be okay if Child requested to visit only one weekend per month, Paternal Grandfather answered, "No." N.T., 5/12/25, at 107. Notably, Attorney O'Donnell, Child's GAL, testified that he believed Paternal Grandparents having one visit per month would be in Child's best interests. *See* N.T., 5/19/25, at 37-38 (opining it would be best for Child to see Paternal Grandparents once per month. I think . . . two weekends per [month] might be a little much because he's in school now").

Even if reviewable, the arguments would not merit relief. Appellants point to the fact the court indicated at the end of the second day of the hearing it had already embarked on its analysis. *See* Appellants' Brief at 78; *see also* N.T., 5/19/25, at 39 (the court states that not much evidence was presented that day[21] and it had determined the bulk of the contempt issues). However, the court stated it kept an "open mind" and "listen[ed] to the remaining testimony." N.T., 5/19/25, at 39. Likewise, while Appellants assert that the court referenced the presumption applicable when grandparents seek *primary*, not partial, physical custody,[22] *see* Appellants' Brief at 78-79, the court's order reflects that it considered the factors pursuant to section 5328(a) and (c), as required. *See* Order (modification), 5/23/25. Additionally, because the court had a petition for modification before it, it did not violate Father's due process rights by modifying legal custody. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 405-06 (Pa. Super. 2014) ("[I]f notice of the proceeding adequately advises a party that custody will be at issue, a court *may* entertain the request to permanently modify a custody order after hearing in that proceeding."). *Compare P.H.D. v. R.R.D.*, 56 A.3d 702, 707-08 (Pa. Super.

_____

[21] Only Mother and Child's GAL testified on May 19, 2025.

[22] *See K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (finding the statutory presumption favoring an award of custody to parents over third-parties inapplicable because paternal grandparents sought only partial physical custody).

2012), Appellants' Brief at 79-80, (concluding a trial court abused its discretion by modifying custody where neither the relevant contempt petition nor the notice contemplated modification).[23]

For the foregoing reasons, we affirm the trial court's orders.

Orders affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/21/2025</u>

---

[23] Moreover, the court's determination regarding **legal** custody is reasonable and supported by logistical concerns related to Father's incarceration. **See** N.T., 5/12/25, at 182-83. The court also specifically provided for the ability to reexamine legal custody upon Father's release. **See** Order (Custody), 5/23/25, at ¶ 1.